UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DANIEL BERNSTEIN and<br>YANA BERNSTEIN,<br><br>    Defendants. | Case No.: 1:19-cv-02912-BMC<br><br>**ANSWER**<br><br>**JURY TRIAL DEMANDED** |

Defendants Daniel Bernstein and Yana Bernstein ("Defendants"), by and through their attorneys, CAPLIN & DRYSDALE, CHARTERED, as and for their Answer to the Complaint dated May 16, 2019 (the "Complaint") state as follows:

## AS TO THE PREAMBLE

The preamble to the Complaint alleges legal conclusions to which no answer is required.  To the extent that an answer is required to the preamble, Defendants deny the allegations.

## AS TO JURISDICTION

1. Admit that this Court has jurisdiction over this action.

2. Admit that Daniel Bernstein resides in Brooklyn, New York.

3. Admit that Yana Bernstein resides in Brooklyn, New York.

## AS TO FACTS COMMON TO BOTH COUNTS

4. Admit the allegations contained in Paragraph 4.

5. Admit the allegations contained in Paragraph 5.

6. Admit that Defendants and their two daughters were listed as beneficial owners of an account with UBS AG in Switzerland with an account number ending 6040 ("UBS Account 6040").

7. Admit that an account was opened at UBS in Switzerland, with an account number

ending "4359" ("UBS Account 4359") with Defendants designated as account holders.

8. Admit the allegations contained in Paragraph 8.

9. Admit the allegations contained in Paragraph 9.

10. Admit that an internet search confirmed the allegations contained in Paragraph 10.

11. Deny the allegations in Paragraph 11, except to admit that the documents received from the IRS contain a letter that reflects the allegations set forth in Paragraph 11.

12. Paragraph 12 alleges legal conclusions to which no answer is required. To the extent that an answer is required to Paragraph 12, Defendants deny the allegations except to admit that during 2009, they held funds with Bank Sal. Oppenheim Jr. & Sie. (Switzerland) Ltd. in Switzerland.

13. Paragraph 13 alleges legal conclusions to which no answer is required. To the extent that an answer is required, Defendants deny the allegations except to admit that on their original tax returns for the 2002 through 2009 tax years, the box in response to question 7(a) on Schedule B was checked "no."

14. Paragraph 14 alleges legal conclusions to which no answer is required. To the extent that an answer is required to Paragraph 14, Defendants admit that during 2010, they held funds with Bank Sal. Oppenheim Jr. & Sie. (Switzerland) Ltd. in Switzerland ("Sal. Oppenheim Accounts").

15. Admit that the aggregate balance of the Sal. Oppenheim Accounts exceeded $10,000 during the 2010 calendar year.

16. Admit the allegations contained in Paragraph 16.

17. Deny the allegations contained in Paragraph 17. Defendants' original Form 1040 for the 2010 tax year was filed with an explicit invocation of the Defendants' rights under the Fifth Amendment to the United States Constitution not to incriminate themselves.

18. Deny the allegations contained in Paragraph 18 because it is incomplete as to the statement attached to the Defendants' 2010 tax return. Defendants' original Form 1040 contained asterisks in several places, which referenced the following statement: "The taxpayers Daniel and Yana Bernstein invoke their rights under the Fifth Amendment of the United States Constitution not to incriminate themselves to the full extent to which they are entitled by law. Certain information

regarding the items designated by an * is not included on this Form 1040 pursuant to <u>United States v. Sullivan</u>, 274 U.S. 259 (1926), <u>Garner v. United States</u>, 424 U.S. 648 (1976), and <u>United States v. Barnes</u>, 604 F. 2d 121 (2nd Cir. 1979).  Each entry so designated is subject to adjustment.  Taxpayers are willing to provide additional information for this Form 1040 upon appropriate assurances to each of them that any information they provide will not be used to incriminate them in any subsequent criminal proceeding."

### AS TO COUNT I – REDUCE FBAR PENALTY LIABILITY AGAINST DANIEL BERNSTEIN TO JUDGMENT

19. Admit the allegations contained in Paragraph 19.

20. Paragraph 20 alleges legal conclusions to which no answer is required.

21. Deny the allegations contained in Paragraph 21.  On June 28, 2011, pursuant to the advice of his legal counsel, Defendant Daniel Bernstein filed Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR") for the 2010 calendar year with an explicit invocation of Defendant's rights under the Fifth Amendment to the United States Constitution not to incriminate himself.  Specifically, the front page of the FBAR stated "FIFTH AMENDMENT" in several fields and referenced the attached addendum.  The attached addendum stated as follows:  "The filer is currently under audit by the Internal Revenue Service.  As indicated on page 1 of this Form TD F 90-22.1, the filer has invoked his rights under the Fifth Amendment of the United States Constitution not to incriminate himself to the full extent to which he is entitled under the law.  Certain information regarding foreign bank and/or financial account(s) is not included on this Form TD F 90-22.1 on Fifth Amendment grounds pursuant to <u>United States v. Sullivan</u>, 274 U.S. 259 (1926), <u>Garner v. United States</u>, 424 U.S. 648 (1976), and <u>United States v. Barnes</u>, 604 F. 2d 121 (2d Cir. 1979).  The filer is willing to provide additional information for this Form TD F 90-22.1 upon appropriate assurances to him that any information he provides will not be used to incriminate him in any subsequent criminal proceeding."

22. Paragraph 22 alleges legal conclusions to which no answer is required.  To the extent that an answer is required to Paragraph 22, Defendants deny the allegations.  Defendants further allege that

the filing of the FBAR for the 2010 calendar year constituted an acknowledgement that Defendant Daniel Bernstein had one or more reportable foreign financial accounts.

23. Paragraph 23 alleges legal conclusions to which no answer is required. To the extent that an answer is required to Paragraph 23, Defendants deny the allegations.

24. Deny the allegations contained in Paragraph 24, except to admit that on March 2, 2015, Defendant Daniel Bernstein filed an *amended* FBAR for the 2010 calendar year which reported a separately owned account at HSBC Bank Canada and four accounts at Bank Sal. Oppenheim Jr. & Cie. (Switzerland) Ltd. jointly owned with Defendant Yana Bernstein. Defendants further allege that during 2010, they only had one account with Bank Sal. Oppenheim Jr. & Cie. (Switzerland) Ltd., which had several sub-accounts. To avoid any confusion, on their amended 2010 FBAR, they reported each sub-account separately.

25. Deny the allegations contained in Paragraph 25, except to admit that on May 18, 2017, the IRS erroneously assessed a penalty in the amount of $262,288.50 against Defendant Daniel Bernstein for his alleged willful violation to timely report the information on the FBAR for the 2010 calendar year.

26. Admit the allegations contained in Paragraph 26.

27. Deny having knowledge or information sufficient to form belief as to the truth of the allegations contained in Paragraph 27.

## AS TO COUNT II – REDUCE FBAR PENALTY LIABILITY AGAINST YANA BERNSTEIN TO JUDGMENT

28. Admit the allegations contained in Paragraph 28.

29. Paragraph 29 alleges legal conclusions to which no answer is required.

30. Deny the allegations contained in Paragraph 30. On June 28, 2011, pursuant to the advice of her legal counsel, Defendant Yana Bernstein filed an FBAR for the 2010 calendar year with an explicit invocation of Defendant's rights under the Fifth Amendment to the United States Constitution not to incriminate herself. Specifically, the front page of the FBAR stated "FIFTH AMENDMENT" in several fields and referenced the attached addendum. The attached addendum stated as follows: "The

filer is currently under audit by the Internal Revenue Service. As indicated on page 1 of this Form TD F 90-22.1, the filer has invoked her rights under the Fifth Amendment of the United States Constitution not to incriminate herself to the full extent to which she is entitled under the law. Certain information regarding foreign bank and/or financial account(s) is not included on this Form TD F 90-22.1 on Fifth Amendment grounds pursuant to United States v. Sullivan, 274 U.S. 259 (1926), Garner v. United States, 424 U.S. 648 (1976), and United States v. Barnes, 604 F. 2d 121 (2d Cir. 1979). The filer is willing to provide additional information for this Form TD F 90-22.1 upon appropriate assurances to her that any information she provides will not be used to incriminate her in any subsequent criminal proceeding."

31. Paragraph 31 alleges legal conclusions to which no answer is required. To the extent that an answer is required to Paragraph 31, Defendants deny the allegations. Defendants further allege that the filing of the FBAR for the 2010 calendar year constituted an acknowledgement that Defendant Yana Bernstein had one or more reportable foreign financial accounts.

32. Paragraph 32 alleges legal conclusions to which no answer is required. To the extent that an answer is required to Paragraph 32, Defendants deny the allegations.

33. Deny the allegations contained in Paragraph 33, except to admit that on March 2, 2015, Defendant Daniel Bernstein filed an *amended* FBAR for the 2010 calendar year which reported a separately owned account at HSBC Bank Canada and four accounts at Bank Sal. Oppenheim Jr. & Cie. (Switzerland) Ltd. jointly owned with Defendant Yana Bernstein. Defendants further allege that during 2010, they only had one account with Bank Sal. Oppenheim Jr. & Cie. (Switzerland) Ltd., which had several sub-accounts. To avoid any confusion, on their amended 2010 FBAR, they reported each sub-account separately.

34. Deny the allegations contained in Paragraph 34 except to admit that on May 18, 2017, the IRS erroneously assessed a penalty in the amount of $262,288.50 against Defendant Yana Bernstein for her alleged willful violation to timely report the information on the FBAR for the 2010 calendar year.

35. Admit the allegations contained in Paragraph 35.

36. Deny having knowledge or information sufficient to form belief as to the truth of the

allegations contained in Paragraph 36.

37. Defendants deny each and every allegation not specifically admitted to above.

## AFFIRMATIVE DEFENSES

Defendants raise the following defenses and set forth the following allegations in support thereof:

### As a First Affirmative Defense – Failure to State A Claim

38. Defendants incorporate all prior responses and allegations.

39. The Complaint fails to satisfy the pleading requirements of Rule 12(b)(6) and Rule 8 of the Federal Rules of Civil Procedure to support the imposition of the willful FBAR penalty under 31 U.S.C. § 5321(a)(5) against each of the Defendants.

40. By letter dated April 21, 2011, the IRS notified Defendants that it was conducting an examination of the Defendants' tax returns.

41. In early May 2011, Defendants retained Lawrence S. Feld, Esq., an attorney located in New York, New York. Mr. Feld, whose practice is concentrated on tax controversy and white collar defense, is a former Assistant U.S. Attorney in the U.S. Attorney's Office for the Southern District of New York, where he served as Assistant Chief Appellate Attorney in the Criminal Division.

42. Almost immediately, it became apparent to Mr. Feld that the IRS's examination of the Defendants related to and was primarily focused on Defendants' alleged unreported interests in the foreign bank accounts.

43. Defendants provided Mr. Feld with all the relevant facts and circumstances, to the extent known or remembered by them at that time, relating to foreign accounts.

44. Pursuant to 31 C.F.R. § 1010.306(c), the due date for the FBAR for the 2010 calendar year was June 30, 2011.

45. At the time Mr. Feld was retained by the Defendants, he was aware of the numerous criminal prosecutions of U.S. owners of unreported foreign accounts and since 2009 had been compiling Department of Justice press releases relating to these prosecutions. Specifically, in May 2011, Mr. Feld

was aware that U.S. owners of foreign bank accounts were being criminally charged with a number of offenses, including: willful failure to file FBARs (31 U.S.C. §§ 5314 and 5322(a)); filing false tax returns (26 U.S.C. § 7206(1)); and conspiracy to defraud the United States and the IRS (18 U.S.C. § 371).

46.     As the filing due date for the 2010 FBAR was approaching, the IRS examination was still in an early stage, and the Revenue Agent conducting the audit had the authority to recommend referral of the case to the IRS CI for criminal investigation.  After considering all of the relevant facts and circumstances as existed at the time, Mr. Feld concluded that the risk of self-incrimination was real and substantial if Defendants provided the information requested on Part II of the FBAR and advised the Defendants to file the FBARs for the 2010 calendar year with an explicit invocation of their rights under the Fifth Amendment to the United States Constitution not to incriminate themselves.  Mr. Feld's legal advice to assert the constitutional privilege against self-incrimination on the Defendants' 2010 FBARs was based on, among other things, awareness of the prosecutions of the U.S. account holders of foreign accounts and the belief that the IRS and the Department of Justice intended to continue and expand this program of prosecuting such individuals.

47.     Pursuant to and in good faith reliance on the advice of Mr. Feld, Defendants each timely filed their respective FBARs for the 2010 calendar year invoking their Fifth Amendment rights and each enclosing the addendum to their FBARs, as set forth in the Defendants' responses to Paragraphs 21 and 30 of the Complaint.

48.     Mr. Feld likewise advised Defendants to file their joint tax return for the 2010 tax year invoking their Fifth Amendment rights against self-incrimination.  Pursuant to and in good faith reliance on Mr. Feld's advice, Defendants timely filed their 2010 joint income tax return with the statement as set forth in the Defendants' response to Paragraph 18 of the Complaint.

49.     In order to support the assertion of the willful FBAR penalty under 31 U.S.C. § 5321(a)(5), Plaintiff must plead the facts supporting the reasonable inferences that (1) Defendants are U.S. persons who (2) had an interest in or signature authority over a foreign account or accounts during the 2010 calendar year, which (3) had an aggregate value of $10,000 or more, and that (4) they failed to

file the requisite FBARs by the due date or to report the accounts at issue on the filed FBARs; and (5) such violation was willful.

50. The Complaint merely states that Defendants' failure to report the information on their 2010 FBARs was willful and that Defendants filed their respective FBARs for the 2010 calendar year, but reflects a summary recitation of the Defendants' explicit, lawful, reasonable and good faith invocation of their Fifth Amendment rights against self-incrimination in the addendum to the FBARs. The Complaint also completely ignores that the Defendants' actions were in reliance on the advice of counsel.

51. Other than the conclusory statements in Paragraphs 23 and 32 of the Complaint, the Complaint is devoid of any facts to plausibly support the inference that Defendants actions violated 31 U.S.C. § 5314 or that such violation was willful.

### As a Second Affirmative Defense – Fifth Amendment Violation

52. Defendants incorporate all prior responses and allegations.

53. The assertion of the willful FBAR penalty in this case violates Defendants' rights under the Fifth Amendment to the United States Constitution against self-incrimination.

54. As a matter of law, a filing of the FBAR with an explicit invocation of the Fifth Amendment rights cannot constitute a "violation" under 31 U.S.C. § 5321(a)(5).

55. Moreover, the filing of an FBAR with an explicit invocation of the Defendants' Fifth Amendment rights in a circumstance where the filer has a reasonable apprehension of self-incrimination is not an act of willfulness sufficient to sustain a penalty under 31 U.S.C. § 5321(a)(5)(C).

56. The assessment of willful FBAR penalties on the Defendants also constitutes an unlawful attempt by the IRS to punish Defendants for exercising their right to counsel, including their right to rely on counsel's advice, guaranteed by the Fifth Amendment to the United States Constitution.

57. Because Defendants did not act willfully, the imposition of willful FBAR penalties would contravene their constitutional rights guaranteed by the Fifth Amendment.

### As a Third Affirmative Defense – Reasonable Cause

58. Defendants incorporate all prior responses and allegations.

59. Defendants could not have "willfully" violated FBAR reporting requirements in connection with their FBARs for the 2010 calendar year because they had reasonable cause for filing FBARs with a Fifth Amendment disclosure.

60. Defendants disclosed all of the relevant information to their attorney, Mr. Feld. Mr. Feld, a tax controversy and white collar defense attorney, considered all of the facts and circumstances, including the timing and progress of the IRS audit and the FBAR due date, and advised Defendants to file their 2010 FBARs invoking their Fifth Amendment rights.

61. Pursuant to and in good faith reliance on Mr. Feld's specific and clear advice, Defendants timely filed the FBARs for the 2010 calendar year explicitly invoking their Fifth Amendment rights.

62. It was reasonable and appropriate for Defendants to rely on the advice of a qualified legal advisor.

### As a Fourth Affirmative Defense – The Amount of Penalty Exceeds the Amounts Permitted by the Statute

63. Defendants incorporate all prior responses and allegations.

64. The amount of penalties imposed by the IRS exceeds the amount permitted by 31 U.S.C § 5321(a)(5)(C). Section 5321(a)(5)(C) authorize the imposition of a willful penalty in the amount that is the greater of $100,000 or 50 percent of the account balance at the time of the violation.

65. The time of the violation in this case is June 30, 2011, the date the FBAR was due.

66. Rather than calculating the penalty based on the statutorily prescribed formula using the balance in the accounts on the date of the violation, i.e., June 30, 2011, the IRS imposed the penalties based on what appears to be the highest aggregate balance on a date during the calendar year 2010.

67. The amount of the imposed penalties exceeds the amount of the penalty as authorized by the statute.

68. Moreover, the amount of the imposed penalties far exceeds the regulatory cap on the penalties under 31 C.F.R. § 1010.820(g)(2), which limits the civil willful penalty for an FBAR violation

to $100,000.

**As a Fifth Affirmative Defense – The Penalty Violates the Excessive Fines Clause**

69. Defendants incorporate all prior responses and allegations.

70. The amount of the assessed FBAR penalties in this case violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

71. On January 29, 2015, Defendants filed an amended tax return for the 2010 tax year. The tax return reflects that Defendants had no additional tax liability resulting from any addition to income relating to the foreign accounts or otherwise.

72. In fact, the IRS Form 4549, Income Tax Examination, dated October 14, 2015, reflects that the IRS examination of the Defendants' income tax liability relating to their offshore holdings resulted in the minimal increase of the tax liability for each year. There was no increase in the tax liability for the 2002, 2003, 2004, and 2010 taxable years. The IRS's adjustments to the Defendants' tax liability for the 2005, 2006, and 2007 tax years in the aggregate was $5,335.

73. Yet, the IRS assessed a willful FBAR penalty against each of the Defendant in the aggregate amount of $524,577.

74. The aggregate amount of the FBAR penalties is not just imposed for the year in which the Plaintiff did not suffer any tax losses relating to the Defendants' alleged violation, but it is also almost one hundred times higher than the Defendants' aggregate tax deficiency relating to foreign accounts.

75. Because the amount of the aggregate FBAR penalties is grossly disproportionate to the alleged violation committed and to the related tax deficiency, the FBAR penalties imposed on the Defendants violate the Excessive Fines Clause of the Eighth Amendment.

**As a Sixth Affirmative Defense – The IRS's Actions Were Arbitrary and Capricious**

76. Defendants incorporate all prior responses and allegations.

77. The IRS acted arbitrarily and capriciously in several ways in connection with its decision to impose willful FBAR penalties for Defendants' alleged violations relating to their 2010 FBARs. First, the IRS was arbitrary and capricious in failing to consider the facts and circumstances specifically

relating to the filing of the Defendants' FBARs for the 2010 calendar year with an explicit invocation of their Fifth Amendment rights against self-incrimination, including the IRS's failure to consider Defendants' reasonable cause for doing so and their reliance on counsel.  Second, the IRS was arbitrary and capricious in denying Defendants the opportunity to appeal the FBAR penalties pre-assessment, which inflated Plaintiff's claim for additional statutory interest.  Third, the IRS was arbitrary and capricious in its computation of the penalties.

78.     During the course of the examination, the IRS did not assess any penalties for Defendants' alleged FBAR violations for years prior to 2010, when Defendants did not consult with counsel.  The IRS only assessed willful FBAR penalties in connection with the Defendants' filing of the 2010 FBARs when they explicitly invoked their Fifth Amendment rights, based and in reliance on the advice of their counsel.  However, in finding that Defendants had acted willfully, the IRS relied on the facts and circumstances relating to Defendants' failure to file FBARs for years prior to 2010, rather than considering the events and circumstances specifically related to the filing of their 2010 FBARs, and in particular, their reasonable cause for doing so in reliance on the advice of counsel.

79.     Defendants appealed the IRS's penalty assessment to the IRS's Office of Appeals.  However, the Appeals Officer again focused on the irrelevant facts and circumstances relating to the Defendants' alleged FBAR violations that occurred in prior years instead of considering the pertinent facts and circumstances in connection with the filing of the Defendants' 2010 FBARs.

80.     The IRS also acted in an arbitrary and capricious manner in failing to timely provide Defendants Letters 3709, which would have afforded Defendants an opportunity to appeal the proposed FBAR penalties pre-assessment.  The IRS issued both Defendants Letters 3708, dated May 18, 2017, which notified the Defendants of the amount of the assessed FBAR penalties and contained the demand for payment.  The Letters 3708 provided no further explanation as to the basis for the penalties.  However, Letters 3708 had a reference to Letters 3709, each stating that, "[y]ou have previously received Letter 3709 explaining the reasons you owe this amount and how the penalty assessment applies to the facts and circumstances of your case."  Defendants never received Letters 3709.  After seeing this reference, Defendants' representative inquired with the IRS about Letters 3709.  In response to the

inquiry, the IRS faxed the representative copies of Defendants' Letters 3709, each also dated May 18, 2017, with some, but not all, of the supporting documents. A review of the Letters 3709 indicated that the timely receipt of these Letters would have afforded Defendants an opportunity to protest the proposed penalties to the IRS's Office of Appeals. As such protest would have occurred prior to the assessment of the penalties, Defendants would not have been accruing any interest on the penalties until the Office of Appeals issued its final determination. However, as the result of the IRS's failure to timely provide Defendants with Letters 3709, they were unnecessarily damaged in the amount of the statutory interest that accrued while their case was pending with the Office of Appeals.

81. Attachments to Defendants' Letters 3709 also revealed that the IRS's computation of the willful FBAR penalty in connection with the 2010 FBARs was arbitrary and capricious and erroneous as a matter of law. The attachments, most of which were dated September 2015, reflect that the IRS initially considered imposing willful penalties for Defendants' alleged violations in connection with both 2009 and 2010 FBARs. Although unclear, it appears that the IRS calculated the 2009 penalty as 50% of the aggregate balance of the accounts. The attachments also reflect that the IRS intended to impose the willful penalty for the Defendants' alleged violation in connection with the 2010 FBARs in the amount of $100,000 per Defendant. However, by the time the IRS assessed the FBAR penalties in May 2017, the statute of limitations on the assessment of the FBAR penalties for the 2009 FBAR violations had expired. Yet, rather than acknowledge that the Defendants' alleged willful violation in connection with the 2010 FBARs did not warrant the penalty in excess of $100,000 per Defendant, the IRS arbitrarily and capriciously assessed the penalties in excess of $100,000. Although the assessed penalties appear to be equal to 50% of the highest aggregate balance of the Defendants' foreign accounts during 2010, Defendants are not able to reconcile the amount of the penalties with the IRS's computations provided to the Defendants.

82. Moreover, despite Defendants' counsel's multiple requests, including a request under the Freedom of Information Act, the IRS withheld and continues to withhold some of the documents that it cited in its reports attached to Letters 3709, on which the IRS allegedly relied on in making its determination.

### As a Seventh Affirmative Defense – Unjust Enrichment

83. Defendants incorporate all prior responses and allegations.

84. Defendants filing of the FBARs for the 2010 calendar year with an explicit invocation of their Fifth Amendment rights resulted in no cognizable loss to the government, tax or otherwise, which the IRS did not dispute.

85. The actual filing of the FBARs for 2010 calendar year, together with the addendum which invoked Defendants' Fifth Amendment rights, clearly communicated to the government that Defendants had an obligation to file an FBAR, explained Defendants' grounds for invoking their Fifth Amendment rights, and provided the conditions under which they would supplement the information provided on their 2010 FBARs.

86. Because the Plaintiff cannot identify any tangible loss that it suffered as a result of the Defendants' filings or correlate any such loss to Defendants' 2010 FBARs, awarding Plaintiff $566,773.12 in willful FBAR penalties would unlawfully punish the Defendants for exercising their constitutional rights and unjustly enrich the Plaintiff.

### JURY DEMAND

87. To the extent permitted by law, Defendants demand a trial by jury on all issues so triable in this matter.

WHEREFORE, the Complaint should be dismissed with prejudice and Defendants should be awarded their costs and attorney fees and any other relief that the Court deems just and proper.

Dated: August 12, 2019.

>Respectfully submitted,
>
>CAPLIN & DRYSDALE, CHARTERED
>
>/s/ Zhanna A. Ziering
>ZHANNA A. ZIERING (ZZ0216)
>Caplin & Drysdale, Chartered
>600 Lexington Ave., 21st Floor
>New York, New York 10022
>Telephone: 212-379-6075

         Fax: 212-379-6001
         Email: zziering@capdale.com


         Scott D. Michel, Esq.
         Caplin & Drysdale, Chartered
         One Thomas Circle, NW, Suite 1100
         Washington, DC 20005
         Telephone: 202-862-5030
         Fax: 202-429-3301
         Email: smichel@capdale.com

TO: Karen E. Wozniak, Esq.
   Trial Attorney, Tax Division
   U.S. Department of Justice
   P.O. Box 55
   Washington, D.C. 20044
   *Attorney for Plaintiff United States of America*
   (Electronic service via CM/ECF)