**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, :<br>            :<br>   *Plaintiff,* :<br>            :<br>   *v.* :<br>            :<br>DANIEL BERNSTEIN and :<br>YANA BERNSTEIN, :<br>            :<br>   *Defendants.* :<br>———————————————————x | N<u>o</u> 1:19-cv-2912<br>Hon. Brian M. Cogan |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDMGENT**

                                    UNITED STATES OF AMERICA

                    By:    */s/ Thomas Peter Cole*
                           THOMAS PETER COLE
                           Trial Attorney, Tax Division
                           U.S. Department of Justice
                           P.O. Box 55
                           Washington, D.C.  20044
                           202-514-9611 (v)
                           202-514-5238 (f)
                           Thomas.P.Cole@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii
TABLE OF AUTHORITIES ......................................................................................................... iii
MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDMGENT .... 1
INTRODUCTION .......................................................................................................................... 1
FACTS ........................................................................................................................................... 2
ARGUMENT ................................................................................................................................. 2
    A.   A Person Who Does Not Properly Report the Existence of a Foreign Bank Account on an FBAR May Be Subject to a Penalty Under 31 U.S.C. § 5321 ..................................................... 2
    B.   The Bernstein Defendants Committed a Willful Violation of the Bank Secrecy Act by Knowing About Their Obligation to Report Their Foreign Account on FBARs for the 2010 Year Prior to the Due Date and Failing to Properly Report Them. ............................................ 3
    C.   The Fifth Amendment Privilege Against Self Incrimination Does Not Allow a Person to Avoid Civil Penalties for Their Willful Failure to Submit an FBAR. ........................................ 7
        1.   An Invocation of the Fifth Amendment Does Not Insulate a Person From Liability That Can Be Otherwise Established in a Civil Action ......................................................................... 7
        2.   It Is Not Even Clear in the Criminal Context Whether There Is a Fifth Amendment Right to Avoid Submitting a Fully Completed FBAR ....................................................................... 10
CONCLUSION ........................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bedrosian v. United States*,
 912 F.3d 144 (3d Cir. 2018) ..................................................................................................2, 3

*California Bankers Ass'n v. Shultz*,
 416 U.S. 21 (1974) .......................................................................................................................7

*Cheek v. United States*,
 498 U.S. 192 (1991) ....................................................................................................................4

*Domanus v. United States*,
 961 F.2d 1323 (7th Cir. 1992) ...................................................................................................4

*Feinberg v. Commissioner*,
 916 F.3d 1330 (10th Cir. 2019) .............................................................................................8, 9

*In re: Grand Jury Subpoena*,
 *741 F.3d 339 (2d Cir. 2013)* ................................................................................................11, 12

*Grosso v. United States*,
 390 U.S. 62 (1968) ..................................................................................................................8, 9

*Haynes v. United States*,
 390 U.S. 85 (1968) ..................................................................................................................8, 9

*Kalb v. United States*,
 505 F.2d 506 (2d Cir. 1974) .......................................................................................................4

*Leary v. United States*,
 395 U.S. 6 (1969) ....................................................................................................................8, 9

*Lefcourt v. United States*,
 125 F.3d 79 (2d Cir. 1997) ................................................................................................4, 5, 6

*Marchetti v. United States*,
 390 U.S. 39 (1968) ..............................................................................................................7, 8, 9

*S.E.C. v. Hirshberg*,
 173 F.3d 846, 1999 WL 163992 (2d Cir. March 18, 1999) .......................................................8

*United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*,
    55 F.3d 78 (2d Cir. 1995) ........................................................................................... 7, 8

*United States v. Dichne*,
    612 F.2d 632 (2d Cir. 1979) ..................................................................................... 10, 11

*United States v. Sturman*,
    951 F.2d 1466 (6th Cir. 1991) .................................................................................. 10, 11

**Statutes**

26 U.S.C. § 280E ................................................................................................................ 8, 9

26 U.S.C. § 6672 ...................................................................................................................... 4

26 U.S.C. § 6721 ...................................................................................................................... 4

26 U.S.C. § 6721(e) .................................................................................................................. 4

31 U.S.C. § 5314 ........................................................................................................... 2, 4, 6, 13

31 U.S.C. § 5321 ............................................................................................................... *passim*

31 U.S.C. § 5321(a)(5)(A) ........................................................................................................ 2

31 U.S.C. § 5321(a)(5)(A)-(D) ................................................................................................. 3

31 U.S.C. § 5321(a)(5)(C) ........................................................................................................ 3

Bank Secrecy Act of 1970 ............................................................................................... *passim*

**Other Authorities**

31 C.F.R. § 1010.350 .............................................................................................................. 2

344-53. Although *In re: Grand Jury Subpoena dated February 2, 2012* .............................. 12

Fifth Amendment ............................................................................................................ *passim*

Fifth and Sixth amendments ................................................................................................... 5

Local Rule 56.1 ....................................................................................................................... 2

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDMGENT**

The United States submits this memorandum in support of its motion for partial summary judgment.

## INTRODUCTION

Defendants concealed nearly a million dollars in a secret overseas bank account for almost a decade, beginning in 2002.  Defendants failed during this period to properly report the account to the United States government, as required by the Bank Secrecy Act.  When given the opportunity in 2009 to disclose the unreported account and enter an IRS program that would provide amnesty for their failure to report the account, Defendants consulted with their legal and business advisors and decided they probably would not get caught and therefore would not enter the IRS program.  Instead, they kept their funds at a second overseas bank and continued to fail to report the existence of that bank account to the IRS.  Only two years later, when the IRS selected the Defendants for an examination, did they seek out a criminal-defense lawyer, who informed them that they had to follow the steps he advised them to follow to have a reasonable likelihood of staying out of prison.  They followed those steps by, among other things, filing an incomplete FBAR for the 2010 year.  They have avoided prison, but, as explained in this brief, are nonetheless liable for the civil penalties assessed against them under 31 U.S.C. § 5321 for their willful failure to report on an FBAR the details of their bank account held with an overseas bank for the 2010 year.[1]

---

[1] This motion for partial summary judgment seeks an order establishing that the Defendants acted willfully within the meaning of 31 U.S.C. § 5321 in failing to properly file an FBAR for the 2010 year.  Should this motion be granted, or if the anticipated motion of the Defendants is denied, the parties will finish discovery related to the amounts of the penalties assessed against the Defendants, and likely file additional motions concerning the appropriateness of the amounts of the penalties assessed against the Defendants.

# FACTS

For the facts, the United States relies upon the facts identified in the Local Rule 56.1 statement of material undisputed facts that has been submitted with this motion.

# ARGUMENT

### A. A Person Who Does Not Properly Report the Existence of a Foreign Bank Account on an FBAR May Be Subject to a Penalty Under 31 U.S.C. § 5321.

The Bank Secrecy Act of 1970 requires United States persons with foreign bank accounts to maintain records and make reports "that may be useful in 'criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities ....'" *Bedrosian v. United States,* 912 F.3d 144, 147 (3d Cir. 2018) (quoting 31 U.S.C. § 5311).[2] Section 5314 instructs the Secretary of the Treasury to prescribe rules that require persons to file reports identifying certain transactions or relations with foreign financial agencies. 31 C.F.R. § 1010.350, in turn, requires that certain United States persons must annually report their relationships with foreign financial institutions on a Report of Foreign Bank and Financial Accounts ("FBAR"). For the year at issue in this case (2010), "[c]overed persons must file it by June 30 each year for foreign accounts exceeding $10,000 in the prior calendar year." *Bedrosian*, 912 F.3d at 147 (*citing* 31 C.F.R. § 1010.306(c).) Given that it is undisputed that Defendants are covered persons who had more than $10,000 in a foreign bank account during 2010, they were required to file the 2010 FBAR by June 30, 2011, disclosing that account.

Pursuant to 31 U.S.C. § 5321(a)(5)(A), the Secretary of the Treasury has the authority to impose civil money penalties on any person who fails to report a foreign account on an FBAR as required. Section 5321 authorizes penalties up to $10,000 for non-willful violations of § 5321

---

[2] Unless otherwise noted, all statutory section references in this memorandum are to Title 31, United States Code.

and, for willful violations, up to the greater of $100,000 or fifty percent of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(A)-(D).

The defendants do not dispute that they are persons who had a foreign bank account with a balance that exceeded $10,000 during 2010. Nor do the parties dispute that a document styled as an FBAR was submitted by June 30, 2011, with the defendants identifying themselves but omitting the required identification of the foreign financial institution, the account number, and the account balance. There also is no dispute that their filing did not identify the substantive information required by the regulation. Defendants admit this, but instead argue that their failure to comply with the requirements of the regulation and the form's instructions does not satisfy the "willfulness" element of 31 U.S.C. § 5321(a)(5)(C). They claim following the 11th hour instructions of their attorney regarding the filing of the FBAR, in order to stay out of prison, excuses the imposition of civil liability. As demonstrated below, that contention is at odds with the law governing civil penalties with a knowledge element.

> **B. The Bernstein Defendants Committed a Willful Violation of the Bank Secrecy Act by Knowing About Their Obligation to Report Their Foreign Account on FBARs for the 2010 Year Prior to the Due Date and Failing to Properly Report Them.**

Willfulness in the context of 31 U.S.C. § 5321 has the same meaning as willfulness in other civil contexts, in that it can be established where the defendant "either knowingly or recklessly fails to file [a] FBAR." *Bedrosian*, 912 F.3d at 152. While there are no Second Circuit cases construing the willfulness element of § 5321, the Third Circuit in *Bedrosian* ruled that "[t]hough 'willfulness' may have many meanings, [the] general consensus among courts is that, in the civil context, the term 'often denotes that which is intentional, or knowing, or voluntary, as distinguished from accidental, and that it is employed to characterize conduct marked by careless disregard whether or not one has the right so to act.'" *Bedrosian*, 912 F.3d at

3

152. (quoting *Wehr v. Burroughs Corp.*, 619 F.2d 276, 281 (3d Cir. 1980) (internal citations omitted)). Unlike the non-willful penalty imposed by 31 U.S.C. § 5321, a willful penalty imposed under 31 U.S.C. § 5321 does not have a reasonable-cause defense.

A person's violation of Section 5314 is knowing or intentional—and thus willful—where the person knows about the obligation to report foreign accounts on the FBAR and fails to properly report them. In the civil context, the willfulness required to prove a civil penalty exists where it can be shown that the person has acted in a "voluntary, conscious, and intentional" manner. *Domanus v. United States*, 961 F.2d 1323, 1325-26 (7th Cir. 1992) (construing willfulness within context of 26 U.S.C. § 6672). That standard is broader than the "standard applied in criminal tax prosecutions," which requires that the government prove an "intentional violation of a known legal duty." *Domanus*, 961 F.2d at 1325 (quoting *Cheek v. United States*, 498 U.S. 192, 200-01 (1991)).

Like other circuits, the Second Circuit has held that, where a civil penalty is at issue, the *Cheek* criminal standard does not apply and the government can meet a willfulness standard by demonstrating "voluntary, conscious, and intentional" conduct. *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (saying "intentional disregard" within context of civil penalty imposed by 26 U.S.C. § 6721 meant conduct that is willful, and explaining that standard); *Kalb v. United States*, 505 F.2d 506, 511 (2d Cir. 1974) (construing meaning of "willful" within context of 26 U.S.C. § 6672).

A demonstration that a person knew of a duty and failed to fully discharge it is sufficient to establish the intentional conduct required for a civil penalty, notwithstanding a protest that the person believed their actions in not fully discharging that duty were justified. Thus, in *Lefcourt*, the Second Circuit affirmed a civil penalty imposed under 26 U.S.C. § 6721(e) against a law firm

4

for its intentional disregard of a requirement that it report receiving a cash payment in excess of $10,000. *Lefcourt*, 125 F.3d at 83. The law firm had attempted to comply with its reporting obligations by filing the required form incompletely, omitting the name of the payor and asserting that its omission was justified under the Fifth and Sixth amendments, as well as under professional responsibility rules. *Lefcourt*, 125 F.3d at 81.

The Second Circuit said that "the 'intentional disregard' set forth in § 6721's penalty provision means conduct that is willful, a term which in this context requires only that a party act voluntarily in withholding requested information, rather than accidentally or unconsciously." *Id.* at 83. The court said that "[a]s it is uncontested that Lefcourt was aware that Form 8300 asked for its client's identity and nonetheless chose to refuse to provide the name, there is no dispute that Lefcourt acted voluntarily." *Id.* at 83. The court rejected the firm's argument that "a good faith belief in the legality of one's conduct—even where that belief later proves to be mistaken or unreasonable—precludes a finding of intentional disregard." *Id.* at 82. Instead, the court ruled that "[o]nce it is determined, as it was here, that the failure to disclose client-identifying information was done purposefully, rather than inadvertently, it is irrelevant that the filer may have believed he was legally justified in withholding such information." *Id.* at 83.

Defendants have been on notice from as early as 2003—when they filed their 2002 income tax return—that they had an obligation to file an FBAR reporting their foreign bank accounts, and annually failed to file the required FBAR. The Schedule B on each of their returns from the 2002 through 2009 tax years asked whether they had any foreign accounts, and alerted them to possible annual reporting obligations. The 2009 UBS Letter expressly alerted UBS account holders that their account information might be turned over to the IRS, and said that it might be prudent to become compliant with FBAR reporting obligations. Lastly, by May 2011,

5

it is undisputed that both Bernstein defendants had been made aware of their obligation to file an FBAR: their criminal defense attorney told them that the FBAR for the 2010 year had to be filed by June 30, 2011. As in *Lefcourt*, the Bernsteins filed a form, but an incomplete one that did not provide all the relevant information the form sought. The Bernsteins, like the filers in *Lefcourt*, employed a strategy that they could knowingly file an incomplete form, but seek to be excused from liability for an intentional civil penalty based on a belief that they were acting reasonably. The Second Circuit in *Lefcourt* found any such belief "irrelevant." *Lefcourt*, 125 F.3d at 83. Once it was determined that the form was "purposefully" not completed in full, "the only question that remains is whether the law required its disclosure." *Lefcourt*, 125 F.3d at 83. Likewise, under *Lefcourt*, the Bernsteins have willfully failed to comply with 31 U.S.C. § 5314, such that they are liable for a willful penalty under 31 U.S.C. § 5321.

Defendants' belief that they had a reasonable basis to submit the FBAR in an incomplete fashion, as advised by their attorney, Mr. Feld, also does not excuse them the civil liability imposed by 31 U.S.C. § 5321. Defendants sought out Feld because he was a criminal-defense lawyer. Feld's advice to them was that if they filed the FBARs that he prepared, they would avoid going to prison. To that end, the cases cited in the addendum to the Feld-prepared FBARs—the only written component of the advice that he provided to them—are all criminal cases. Feld testified that his clients' goal was to stay out of prison. Mr. Bernstein even testified that he understood that submitting the Feld-prepared FBAR might still expose him to a fine, even if it might insulate him from criminal liability. There is no testimony that Feld and the Defendants specifically discussed the potential civil liability that might arise from submitting an incomplete FBAR on which the Fifth Amendment was invoked.

6

### C. The Fifth Amendment Privilege Against Self Incrimination Does Not Allow a Person to Avoid Civil Penalties for Their Willful Failure to Submit an FBAR.

As demonstrated above, Defendants are liable for a willful penalty imposed under 31 U.S.C. § 5321 because they knew of their obligation to file an FBAR for the 2010 year by June 30, 2011, and did not file an FBAR for the 2010 year by June 30, 2011 that reported their foreign account. Defendants contend that by filing their attorney-prepared FBARs, on which they claimed a Fifth Amendment right to decline to identify the account information on the grounds that providing the information would incriminate them, they cannot be held liable for a willful penalty. That contention has no basis in the case law.

#### 1. An Invocation of the Fifth Amendment Does Not Insulate a Person From Liability That Can Be Otherwise Established in a Civil Action.

The Fifth Amendment provides a privilege that protects against compulsory self-incrimination. *See California Bankers Ass'n v. Shultz*, 416 U.S. 21, 71 (1974). When properly invoked, the privilege will provide a complete defense to criminal prosecution. *Marchetti v. United States*, 390 U.S. 39, 60 (1968). In order to properly invoke the privilege, the claimant must be confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination. *Id.* at 53. The Fifth Amendment privilege against self-incrimination, when properly invoked, provides protection against criminal liability but rarely, if ever, can insulate the person invoking the privilege from the civil consequences of asserting the privilege.

Indeed, it is well-established that the Fifth Amendment provides little, if any, benefit in the civil context. Where the Fifth Amendment is asserted in response to a discovery request in a civil action, the Second Circuit has ruled that a "'party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence.'" *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995) (quoting *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir.1992)). "[T]he claim of privilege

7

will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." *4003-4005 5th Ave.*, 55 F.3d at 83. *See also S.E.C. v. Hirshberg*, 173 F.3d 846, 1999 WL 163992, at *2 (2d Cir. March 18, 1999) (saying "[a]lthough a party in a civil proceeding has a constitutionally-protected right to assert the privilege against self-incrimination, litigants denied discovery based upon an assertion of the privilege may ask the court or trier of fact to draw a negative inference from the invocation of the right.").

Courts elsewhere have ruled that an assertion of the Fifth Amendment cannot be used by a civil party to excuse that party from proffering evidence required to sustain the asserting party's claim or defense. In *Feinberg v. Commissioner*, 916 F.3d 1330 (10th Cir. 2019), three individuals operating a company engaged in the sale of medical marijuana claimed that the Fifth Amendment allowed them to avoid having to present evidence in Tax Court with respect to an issue arising under 26 U.S.C. § 280E, which prohibits deductions related to the illegal sale of drugs. *Feinberg*, 916 F.3d at 1331. The individuals there cited "a series of Supreme Court cases recognizing the Fifth Amendment 'right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act.'" *Feinberg*, 916 F.3d at 1335 (quoting *Leary v. United States*, 395 U.S. 6 (1969)). In addition to *Leary*, the individuals cited *Haynes v. United States*, 390 U.S. 85, 95 (1968) (considering a petitioner's claim that "satisfaction of his obligation to register would have compelled him to provide information incriminating to himself"); *Grosso v. United States*, 390 U.S. 62, 66–67 (1968) (dealing with a statute where the petitioner "is obliged, on pain of criminal prosecution, to provide information which would readily incriminate him, and which he may reasonably expect would be provided to prosecuting authorities"); and *Marchetti v. United States*, 390 U.S. 39, 42 (1968) (concluding statutory

8

registration requirements "may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination").

The Tenth Circuit found *Leary*, *Haynes*, *Grosso*, and *Marchetti* inapplicable in a civil context, finding that each case involved a prosecution "for failing to comply with a statute compelling them to provide self-incriminating information, and the Court determined the Fifth Amendment privilege provided a complete defense to that failure." *Feinberg*, 916 F.3d at 1335-36. Instead, the court said that the individuals before it failed "to explain how requiring them to bear the burden of proving the IRS erred in applying § 280E to calculate their civil tax liability is a form of compulsion equivalent to a statute that imposes criminal liability for failing to provide information subjecting the party to liability under another criminal statute." *Feinberg*, 916 F.3d at 1336. Saying that "'a party who asserts the privilege against self-incrimination must bear the consequences of [the] lack of evidence,'" the court rejected the individuals' contention "that bearing the burden of proving the IRS erred in rejecting THC's business deduction under § 280E violated the Taxpayers' Fifth Amendment privilege." *Feinberg*, 916 F.3d at 1337 (quoting *United States v. Goodman*, 527 F.App'x 697, 700 (10th Cir. 2013)).

In presenting these cases, we are not at this point asking the Court to draw an adverse inference, as the willfulness component of § 5321 is not in this case being demonstrated through the Feld-prepared FBARs, but instead through the undisputed knowledge that the Defendants had by the time they signed their FBARs of their obligation to file an FBAR and their failure to file an FBAR that reported their foreign account. That is, given their admitted knowledge of their obligation to file the FBAR, the submission of the form without the necessary information

9

gives rise to willfulness. Defendants here have admitted that they knew of their filing obligations and failed to submit a properly completed FBAR.

### 2. It Is Not Even Clear in the Criminal Context Whether There Is a Fifth Amendment Right to Avoid Submitting a Fully Completed FBAR.

It is not clear even in the criminal context that an assertion of the Fifth Amendment on an FBAR meets the standard required by the Supreme Court for a successful application of the Fifth Amendment. Although this issue is not one that needs to be resolved for purposes of this lawsuit, the two circuit court of appeals to have issued decisions construing the Fifth Amendment and the filing obligations imposed by the Bank Secrecy Act have ruled that Bank Secrecy Act filing obligations are not unconstitutional under the Fifth Amendment. In *United States v. Dichne*, 612 F.2d 632 (2d Cir. 1979), the Second Circuit held that the Bank Secrecy Act requirement that an individual file a form reporting the transportation of over $5,000 out of the country did not violate the Fifth Amendment. The Second Circuit found that, in view of the lack of a direct linkage between the required disclosure and the potential criminal activity, and in view of the fact that the statute is not directed at an "inherently suspect group," the reporting requirement does not present such a substantial risk of incrimination so as to outweigh the governmental interest in requiring such a disclosure. *Dichne*, 612 F.2d at 640-41. The criminal conviction at issue in *Dichne* was upheld. *Dichne*, 612 F.2d at 642.

No Second Circuit opinion specifically addresses the Fifth Amendment as applied to the Bank Secrecy Act's FBAR-filing requirement, but the one circuit court to have considered the issue ruled that the Fifth Amendment did not preclude a conviction for failing to file an FBAR. In *United States v. Sturman*, 951 F.2d 1466 (6th Cir. 1991), among the criminal charges against the defendant were charges that he failed to file FBARs during the years he was under investigation. *Sturman*, 951 F.2d at 1486. The Sixth Circuit found the defendant's claim to not

incriminate himself was based "on a line of cases which have found various reporting requirements in violation of the privilege against compulsory self-incrimination when specific conditions are met." *Sturman*, 951 F.2d at 1456 (citing *Marchetti v. United States*, 390 U.S. 39 (1968), *Grosso v. United States*, 390 U.S. 62 (1968) and *Haynes v. United States*, 390 U.S. 85, (1968)). Summarizing the holdings of those cases, the Sixth Circuit ruled that the "Supreme Court held in these cases that statutes violate the right against compulsory self-incrimination when (1) they are directed against a 'selective group inherently suspect of criminal activity'; (2) requirements are imposed in an 'area permeated with criminal statutes'; and (3) reporting requirements would have placed the subject in real danger of self-incrimination." *Sturman*, 951 F.2d at 1487 (quoting *Marchetti*, 390 U.S. at 47, and *Grosso*, 390 U.S. at 64). The Sixth Circuit found that the Bank Secrecy Act did not fall into that category, as the Act "applies to all persons making foreign deposits, most of whom do so with legally obtained funds." *Sturman*, 951 F.2d at 1487. Instead, it was a requirement "imposed in the banking regulatory field which is not infused with criminal statutes." *Sturman*, 951 F.2d at 1487. Moreover, FBAR disclosures did not "subject the defendant to a real danger of self-incrimination since the source of the funds is not disclosed." *Sturman*, 951 F.2d at 1487. Like the conviction in *Dichne*, the conviction in *Sturman* was affirmed.

Back in the Second Circuit, the Second Circuit has held that the Fifth Amendment cannot be asserted to prevent a person from having to comply with the production of bank records required to be maintained under the Bank Secrecy Act. In *In re: Grand Jury Subpoena dated February 2, 2012*, 741 F.3d 339 (2d. Cir. 2013), the Second Circuit ruled that the subpoena seeking the production of foreign bank records did not violate a person's "right against self incrimination because the documents were "required records"—records whose creation and

preservation serves a legitimate governmental regulatory interest." *In re: Grand Jury Subpoena dated February 2, 2012*, 741 F.3d at 342. That case involved a somewhat different aspect of the Fifth Amendment privilege from the Fifth Amendment privilege claimed here, in that the party claimed that the Fifth Amendment act of production privilege—as opposed to a testimonial privilege—allowed him to avoid producing incriminating information. The required-records exception to the act of production privilege "abrogates the protection of the privilege for a subset of those documents that must be maintained by law." *In re: Grand Jury Subpoena dated February 2, 2012*, 741 F.3d at 344. Finding that the Bank Secrecy Act served a broad regulatory purpose, the Second Circuit ruled that the subpoena recipient could not assert the Fifth Amendment to avoid having to produce the documents. *In re: Grand Jury Subpoena dated February 2, 2012*, 741 F.3d at 344-53. Although *In re: Grand Jury Subpoena dated February 2, 2012* concerns a Fifth Amendment privilege asserted with an act of production, as opposed to a testimonial act, its reasoning concerning the limitations of the Fifth Amendment with respect to actions required under the Bank Secrecy Act is instructive. The information required to be provided on an FBAR is less expansive than the documents that are required to be kept under the Bank Secrecy Act.

## CONCLUSION

For the reasons set forth in this memorandum, the United States requests that the Court enter an order of partial summary judgment, finding that each defendant committed a willful violation of 31 U.S.C. § 5314, such that they can be liable for the penalty assessed against each of them pursuant to 31 U.S.C. § 5321, and permitting further briefing on whether the defendants' defenses with respect to the amount of the penalty can be sustained.

UNITED STATES OF AMERICA

By: */s/ Thomas Peter Cole*
THOMAS PETER COLE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-9611 (v)
202-514-5238 (f)
Thomas.P.Cole@usdoj.gov