**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL BERNSTEIN and<br>YANA BERNSTEIN,<br>Defendants. ) ) ) ) ) ) ) ) ) ) ) | Case No.: 1:19-cv-02912-BMC<br><br>Judge Brian M. Cogan |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

CAPLIN & DRYSDALE, CHARTERED


By:     /s/ Zhanna A. Ziering
        Zhanna A. Ziering (Member of the Firm)
        NY State Bar No.: 036482006
        EDNY Bar No.: ZZ0216
        CAPLIN & DRYSDALE, CHARTERED
        600 Lexington Avenue, 21st Floor
        New York, New York 10022
        zziering@capdale.com
        Tel: (212) 379-6075
        Fax: (212) 379-6000

        Scott D. Michel (*Admitted Pro Hac Vice*)
        (Member of the Firm)
        NY State Bar No.: 2569572
        CAPLIN & DRYSDALE, CHARTERED
        One Thomas Circle, N.W., Suite 1100

Washington, DC 20005
smichel@capdale.com
Tel: 202-862-5030
Fax: 202-429-3301

Attorneys for *Defendants*

# Table of Contents

A.   PROCEDURAL HISTORY ................................................................................ 1

B.   PRELIMINARY STATEMENT ....................................................................... 1

C.   FACTUAL BACKGROUND ............................................................................ 3

D.   ARGUMENT ..................................................................................................... 7

   I.   Legal Standard ............................................................................................. 7

  II.   An FBAR Filed with an Explicit Assertion of the Fifth Amendment Privilege Against Self-Incrimination Does not Violate the FBAR Reporting Requirement ............. 8

    1.   The Fifth Amendment Privilege May Lawfully be Asserted on a Timely Filed FBAR ...................................................................................................... 9

    2.   Defendants Validly Claimed Privilege on the Timely Filed FBARs ....................... 11

      a.   The FBAR Filing Requirement is Compulsory .......................................... 11

      b.   The FBAR Requires Disclosure of Testimonial Information..................................... 12

      c.   Defendants Asserted the Fifth Amendment Privilege in Good Faith In Fear of Self-Incrimination ................................................................................. 16

    3.   A Civil Willful FBAR Penalty is an Impermissible Sanction for a Valid Fifth Amendment Claim ............................................................................... 19

  III.   The Bernsteins' FBARs Filed on Advice of Counsel with an Explicit Assertion of the Fifth Amendment Privilege are not a *Willful* Violation ................................. 21

    CONCLUSION ....................................................................................................... 26

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................ 7

*Arthur Lipper Corp. v. SEC*,
   547 F.2d 171 (2d Cir. 1976) ............................................................. 23

*Bedrosian v. U.S.*,
   912 F.3d 144 (3d Cir. 2018) ............................................................. 25

*Boulware v. U.S.*,
   552 U.S. 421 (2008) .......................................................................... 23

*C.E. Carlson, Inc. v. SEC*,
   859 F.2d 1429 (10th Cir. 1988) ....................................................... 24

*California Bankers Association v. Shultz*,
   416 U.S. 21 (1974) ............................................................................ 11

*Camelot Group, Ltd. v. W.A. Krueger Co.*,
   486 F. Supp. 1221 (S.D.N.Y. 1980) ................................................. 16

*Chavez v. Martinez*,
   538 U.S. 760 (2003) .......................................................................... 19

*Cheek v. U.S.*,
   498 U.S. 192 (1991) ..................................................................... 22, 24

*Convertino v. U.S. Dep't of Justice*,
   795 F.3d 587 (6th Cir. 2015) ............................................................ 16

*Doe v. U.S.*,
   487 U.S. 201 (1988) .......................................................... 9, 12, 13, 15

*Evangelista v. Ashcroft*,
   359 F.3d 145 (2d Cir. 2004) ............................................................. 23

*Feinberg v. Comm'r*,
   808 F.3d 813 (10th Cir. 2015) ......................................................... 16

*Fisher v. U.S.*,
   425 U.S. 391 (1976) .......................................................................... 14

*Garner v. U.S.*,
   424 U.S. 648 (1976) ...................................................... 9, 10, 12, 15, 19

*Garrity v. New Jersey*,
   385 U.S. 493 (1967) .......................................................................... 21

*Gilbert v. California*,
   388 U.S. 263 (1967) .......................................................................... 12

*Global-Tech Appliances, Inc. v. SEB S. A.*,
   563 U.S. 754 (2011) .......................................................................... 25

*Griffin v. California*,
   380 U.S. 609 (1965) .......................................................................... 20

*Grosso v. U.S.*,
  390 U.S. 62 (1968) ............................................................................................. 13
*Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*,
  542 U.S. 177 (2004) ...................................................................................... 9, 11
*Hoffman v. U.S.*,
  341 U.S. 479 (1951) ................................................................................ 9, 16, 18
*In re Grand Jury Investigation M.H.*,
  648 F.3d 1067 (9th Cir. 2011) ........................................................................ 14
*In re Grand Jury Proceedings*,
  707 F.3d 1262 (11th Cir. 2013) ...................................................................... 14
*In re Grand Jury Subpoena*,
  741 F.3d 339 (2d Cir. 2013) ..................................................................... 13, 14
*Kastigar v. U.S.*,
  406 U.S. 441 (1972) ................................................................................... 16, 19
*Lefkowitz v. Cunningham*,
  431 U.S. 801 (1977) ............................................................................... 9, 15, 20
*Lefkowitz v. Turley*,
  414 U.S. 70 (1973) ........................................................................................... 20
*McKune v. Lile*,
  536 U.S. 24 (2002) ........................................................................................... 21
*Norman v. U.S.*,
  942 F.3d 1111 (Fed. Cir. 2019) ...................................................................... 25
*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997) ................................................................................ 7
*Safeco Ins. Co. of America v. Burr*,
  551 U.S. 47 (2007) ........................................................................................... 22
*Schmerber v. California*,
  384 U.S. 757 (1966) ......................................................................................... 12
*Shapiro v. U.S.*,
  335 U.S. 1 (1948) ............................................................................................. 13
*Spevack v. Klein*,
  385 U.S. 511 (1967) ......................................................................................... 20
*U.S. v. Ali*,
  2014 WL 5790996 (D. Md. Nov. 5, 2014) ..................................................... 15
*U.S. v. Barnes*,
  604 F.2d 121 (2d Cir. 1979) ............................................................................ 10
*U.S. v. Bishop*,
  412 U.S. 346 (1973) ......................................................................................... 22
*U.S. v. Des Jardins*,
  772 F.2d 578 (9th Cir. 1985) ..................................................................... 11, 19
*U.S. v. Dichne*,
  612 F.2d 632 (2d Cir. 1979) ............................................................................ 11
*U.S. v. Doyle*,
  2018 WL 1902506 (S.D.N.Y. Apr. 19, 2018) ................................................ 21
*U.S. v. Evangelista*,
  122 F.3d 112 (2d Cir. 1997) ...................................................................... 22, 24

*U.S. v. Flume,*
   390 F. Supp. 3d 847 (S.D. Tex. 2019) ................................................................ 25
*U.S. v. Garitty,*
   304 F. Supp. 3d 267 (D. Conn. 2018) ................................................................ 22
*U.S. v. Greenfield,*
   831 F. 3d 106 (2d Cir. 2016) ................................................................................ 9
*U.S. v. Horowitz,*
   361 F. Supp. 3d 511 (D. Md. 2019) ................................................................... 22
*U.S. v. Josephberg,*
   418 F. Supp. 2d 297 (S.D.N.Y. 2005) ............................................................... 24
*U.S. v. Josephberg,*
   562 F.3d 478 (2d Cir. 2009) ............................................................................... 10
*U.S. v. Lowe,*
   664 Fed. Appx. 38 (2d Cir. 2016) ...................................................................... 24
*U.S. v. Matthews,*
   787 F.2d 38 (2d Cir. 1986) ................................................................................. 20
*U.S. v. McBride,*
   908 F. Supp. 2d 1186 (D. Utah 2012) .................................................... 22, 23, 25
*U.S. v. Miranti,*
   253 F.2d 135 (2d Cir. 1958) ............................................................................... 16
*U.S. v. Okatan,*
   728 F.3d 111 (2d Cir. 2013) ............................................................................... 19
*U.S. v. Pomponio,*
   429 U.S. 10 (1976) .............................................................................................. 22
*U.S. v. Rivas–Macias,*
   537 F.3d 1271 (10th Cir. 2008) .......................................................................... 16
*U.S. v. San Juan,*
   405 F. Supp. 686 (D. Vt. 1975) ..................................................................... 11, 19
*U.S. v. Scully,*
   877 F.3d 464 (2d Cir. 2017) ............................................................................... 24
*U.S. v. Sturman,*
   951 F.2d 1466 (6th Cir. 1991) ............................................................. 10, 11, 18, 19
*U.S. v. Sullivan,*
   274 U.S. 259 (1927) ...................................................................................... passim
*U.S. v. Under Seal,*
   737 F.3d 330 (4th Cir. 2013) .............................................................................. 14
*U.S. v. Williams,*
   489 F. App'x 655 (4th Cir. 2012) ....................................................................... 22
*Ullmann v. U.S.,*
   350 U.S. 422 (1956) ............................................................................................ 21
*Uniformed Sanitation Men Assn. v. Comm'r of Sanitation of N.Y.,*
   392 U.S. 280 (1968) ............................................................................................ 20
*Youssefzadeh v. Comm'r,*
   T.C. Dk. No. 14868-14L (Nov. 6, 2015)....................................................... 15, 16
*Zacharias v. SEC,*
   569 F.3d 458 (D.C. Cir. 2009) ........................................................................... 24

**Statutes**

18 U.S.C. § 371 ................................................................................................... 5
18 U.S.C. § 3282(a) .......................................................................................... 17
26 U.S.C. § 6531 .............................................................................................. 17
26 U.S.C. § 6663 .............................................................................................. 23
26 U.S.C. § 7206(1) ........................................................................................... 5
31 U.S.C. § 5314 ....................................................................................... passim
31 U.S.C. § 5321 ....................................................................................... passim
31 U.S.C. § 5322 ....................................................................................... passim

**Constitution**

U.S. Const. amend. V ............................................................................... passim

**Rules**

Fed. R. Civ. P. 56 ............................................................................................ 1,7
Local Civil Rule 56.1 ...................................................................................... 1,3

**Regulations**

31 C.F.R. § 1010.306 ........................................................................................ 8
31 C.F.R. § 1010.350 ........................................................................................ 8
31 C.F.R. § 1010.420 ...................................................................................... 14

**Other Authorities**

IRS Chief Counsel Memorandum 200603026 (Jan. 20, 2006) .................................... 22
IRS Chief Counsel Memorandum POSTS-134605-17 (May 23, 2018) ...................... 23
Dep't of Treasury Memorandum of Agreement and Delegation of Authority for Enforcement of
    FBAR Requirements (Apr. 8, 2003) ........................................................... 16
Edward M. Robbins, Jr., *The Fifth Amendment FBAR Lives!*
    139 *Tax Notes* 1546 (June 24, 2013) ......................................................... 19
Michel, Scott D., *Advising a Client with Secret Offshore Accounts—Current Filing and
    Reporting Problems*, J. of Tax'n 158 ........................................................ 19

Defendants Daniel and Yana Bernstein ("Defendants" or the "Bernsteins"), by and through their counsel, hereby submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56. Defendants submit that a favorable ruling on either issue raised in the Motion will resolve the pending litigation in full for the Defendants.

## A. PROCEDURAL HISTORY

On May 16, 2019, the United States filed the Complaint to collect penalties assessed under 31 U.S.C. § 5321(a)(5) for an alleged willful violation of the statutory requirement to report their financial interests in foreign bank accounts. [Dkt. No. 1]. Defendants answered [Dkt. No. 13] and, following a scheduling conference with the Court, the parties commenced discovery. On November 26, 2019, the parties had a status conference with the Court, during which upon the parties' request, the Court authorized the filing of cross-motions for summary judgment.

## B. PRELIMINARY STATEMENT

This case presents important questions concerning the scope of the Fifth Amendment privilege against self-incrimination. This is the first time a federal court is called upon to decide whether an individual may lawfully assert the privilege on a timely filed Report of Foreign Bank and Financial Accounts, known colloquially as the FBAR,[1] where information responsive to specific questions on the form would be incriminating. The Complaint in this action seeks to collect $524,577 in punitive monetary penalties, plus interest and late payment penalties, assessed by the IRS against the Defendants for alleged violations of Section 5314 of the Bank Secrecy Act ("the BSA"). The core of the Government's case is the allegation that Dr. Daniel Bernstein and his wife

---

[1] During the period relevant to this litigation, the form in question was formally denominated "TD F. 90-22.1."

1

Yana Bernstein engaged in a willful violation of law when, on advice of counsel, each filed a 2010 FBAR invoking their Fifth Amendment privilege in declining to provide certain information regarding a Swiss bank account beneficially owned by them that they had not previously reported on any FBAR or federal income tax return.

The Defendants submit that, as a matter of law, summary judgment should be granted in their favor for the following reasons:

1.      The FBAR compels filers to reveal specific information regarding their foreign financial accounts. Such information is both testimonial and, if the filer has not previously reported such accounts, potentially incriminating. The Fifth Amendment to the United States Constitution forbids the Government from imposing substantial economic penalties when, as here, there has been a valid and good faith assertion of the privilege against self-incrimination on a timely filed FBAR.

2.      To prevail on its claims under 31 U.S.C. § 5321(a)(5)(C), the Government must demonstrate that the Defendants acted willfully in failing to comply with FBAR reporting requirements. The indisputable facts in this case establish that the Defendants relied on the advice of their counsel and followed that advice when they filed the 2010 FBARs invoking their privilege against self-incrimination with respect to certain information required by the form. The evidence demonstrates that the Defendants fully and honestly presented all of the material facts to their attorney and in good faith followed his advice, relying on it and believing it to be correct. When they signed and filed 2010 FBARs, they intended to act lawfully. In these circumstances, willfulness cannot be established as a matter of law, even if counsel's advice is ultimately found to be an incorrect interpretation of law.

2

## C.  FACTUAL BACKGROUND

For years 2002 through 2009, Defendants had a financial interest in foreign accounts with UBS in Switzerland. (Fact St. Para. 4-6, 8; Ex. 5, 7).[2] The account, initially held in the name of a BVI company, was transferred to the Defendants' as individuals in 2004.[3] (Fact St. Para. 4; Ex. 3; Compl. Para. 5).[4] The Defendants instructed UBS to retain all account-related correspondence for a fee. (Fact St., Para. 6; Compl. Para. 8). On February 18, 2009, the U.S. Department of Justice ("DOJ") and UBS entered into a Deferred Prosecution Agreement ("DPA"), whereby UBS provided the United States with the identities of some of their U.S. customers. (Fact St. Para. 7; Ex. 8; Compl. Para. 10). By letter dated February 20, 2009, Dr. Bernstein instructed UBS to close the account and transfer the funds to another Swiss bank, Bank Sal Oppenheim jr. & Cie (Switzerland) ("Sal Oppenheim"). (Fact St. Para. 8; Ex. 9; Compl. Para. 11). The account at Sal Oppenheim was held in the name of a Seychelles corporate entity. (Fact St. Para. 8; Ex. 10). For all the years Defendants owned foreign bank accounts, until April-May 2011, they kept these accounts secret from their accountant and from the IRS. (Fact St. Para. 9, 11; Ex. 1, Y. Bern. Tr. 14:25-15:9; Ex. 11, D. Bern. Tr. 12:10-17, 15:20-16:13).[5]

---

[2] Citations to "Fact St. Para. __" refer to the paragraphs contained in the Defendants' Statement of Undisputed Material Facts, filed pursuant to Local Civil Rule 56.1(a), in conjunction with the Motion. Citations to "Ex.__" refer to exhibits attached to the Affirmation of Zhanna A. Ziering, submitted herewith.

[3] Another account with UBS was held in the name of a Bahamian company from 2002 through 2003. (Fact St. Para. 4-5; Ex. 4, 6).

[4] Citations to "Compl. _" refer to the Complaint, dated May 16, 2019, [Dkt. 1] and the paragraphs or pages therein.

[5] Citations to "Y. Bern. Tr. _" refer to excerpts of the deposition transcript of Yana Bernstein, dated January 16, 2020, which are attached as exhibits to the Affirmation of Zhanna A. Ziering, submitted herewith. Citations to "D. Bern. Tr. _" refer to excerpts of the deposition transcript of Daniel Bernstein, dated January 16, 2020, which are attached as exhibits to the Affirmation of Zhanna A. Ziering, submitted herewith.

In September 2009, after the U.S. Government and UBS entered into a second agreement providing for the disclosure of additional customer information, UBS advised the Bernsteins in writing that the bank intended to disclose their account information to the IRS. (Fact St. Para. 10; Ex. 12). The letter encouraged them to seek legal assistance and to consider entering the IRS's Offshore Voluntary Disclosure Program (OVDP). *Id*. The Defendants consulted with an international tax attorney but decided not to enter the OVDP, nor did they disclose their financial interest in any foreign accounts on their 2009 tax return or file FBARs. (Fact St. Para. 10-11; Ex. 11, D. Bern. Tr. 12:10-17, 13:10-15:19, 24:10-26:22; Ex. 13, D. Bern. Tr. 38:4-40:2; Ex. 1, Y. Bern. Tr. 15:23-16:14).

In April 2011, the IRS notified the Defendants that it was commencing an audit of their 2007 tax return. (Fact St. Para. 12; Ex. 14). In light of the events that preceded the receipt of the UBS letter and Defendants' decision not to participate in OVDP, they were concerned about their failure to report the UBS and Sal Oppenheim accounts to the IRS. (Fact St. Para. 17; Ex. 11, D. Bern. Tr. 19:21-21:5, 23:9-22; Ex. 17, Y. Bern. Tr. 31:18-32:10). They had seen media reports about the Government's prosecution of other UBS account holders. (Fact St. Para. 13; Ex. 15, Feld Tr.[6] 28:11-29:2; Ex. 16, D. Bern. Tr. 43:19-44:4; Ex. 17, Y. Bern. Tr. 34:14-25). The Defendants contacted the attorney they met with in 2009. (Fact St. Para. 14; Ex. 11, D. Bern. Tr. 18:10-19:8; Ex. 13, D. Bern. Tr. 41:5-23; Ex. 17, Y. Bern. Tr. 29:16-31:17). He urged them to consult a lawyer qualified to handle tax cases with criminal implications, recommending Lawrence S. Feld, a prominent New York tax controversy and white collar defense attorney. (*Id*.; Ex. 15, Feld Tr. 7:22-

---

[6] Citations to "Feld Tr. _" refer to excerpts of the deposition transcript of Lawrence S. Feld, dated January 15, 2020, which are attached as exhibits to the Affirmation of Zhanna A. Ziering, submitted herewith.

9:22, 14:9-22; Ex. 18).

The Bernsteins soon thereafter met with Mr. Feld and described their situation.(Fact St. Para. 16; Ex.15, Feld Tr. 13:17-23, 17:9-20:25, 24:6-28:10; Ex. 11, D. Bern. Tr. 19:21-21:5, 22:12-25). Mr. Feld was also well aware of the well-publicized IRS and DOJ enforcement campaign against U.S. owners of unreported foreign bank accounts and others. (Fact. St. Para. 15; Ex. 15, Feld Tr. 9:22-13:5). Since 2009, Mr. Feld, who is a co-author of *Tax Fraud and Evasion*, a comprehensive legal treatise on tax fraud and money laundering, had been compiling DOJ press releases relating to the prosecution of U.S. owners of foreign bank accounts, who were being criminally charged with offenses, including the willful failure to file FBARs (31 U.S.C. §§ 5314 and 5322(a)); filing false tax returns (26 U.S.C. § 7206(1)); and conspiracy to defraud the United States and the IRS (18 U.S.C. § 371). (*Id.*; Ex. 19).

Drawing on his expertise and taking into consideration i) the indictments, convictions, and sentences during 2009 through 2011 of U.S. owners who had unreported foreign bank accounts, ii) the notification received by the Bernsteins from UBS and their subsequent inaction, and iii) the authority of an IRS civil auditor to refer the Defendants' case to the IRS Criminal Investigation Division ("IRS-CI"), Mr. Feld believed that there was a real possibility that Defendants would be criminally investigated and prosecuted for their prior tax and FBAR noncompliance. (Fact. St. Para. 17; Ex. 15, Feld Tr. 17:9-20:25, 21:4-22:8; Ex. 20, Feld Tr. 48:3-49:8). Mr. Feld then discussed the criminal exposure with the Defendants, who were terrified of going to prison.[7] (Fact. St. Para. 17; Ex. 15, Feld Tr. 17:9-20:25; Ex. 11, D. Bern. Tr. 19:21-21:5; 23:9-22; Ex. 17, Y. Bern. Tr. 31:18-32:10).

---

[7] Dr. Bernstein also believed that even a criminal investigation could jeopardize his professional dental license. (Fact. St., Para. 17; Ex. 11, D. Bern. Tr. 19:21-21:5).

At the time of the Bernsteins' meetings with Mr. Feld, the June 30 filing deadline for the 2010 FBAR was near. (Fact St. Para. 18; Ex. 15, Feld Tr. 17:9-20:25). Mr. Feld determined that the risk of self-incrimination was substantial if the Defendants provided specific account-related information on their respective 2010 FBARs. *Id.* He believed that identifying the bank where Defendants held the previously undisclosed account "would enable the government to obtain by various means, information concerning that account and the entire history of their unreported accounts at that bank and UBS." (Fact St. Para. 18; Ex. 15, Feld Tr. 34:12-21; 35:4-36:15). Mr. Feld believed that this information was "a link in the chain" that could incriminate the Defendants. (Fact St. Para. 18; Ex. 15, Feld Tr. 34:12-21). Accordingly, Mr. Feld advised the Defendants to timely file their respective FBARs for the 2010 calendar year with an explicit invocation of their rights under the Fifth Amendment not to incriminate themselves. (Fact St. Para. 19; Ex. 15, Feld Tr. 17:9-20:25; 30:13-31:7; Ex. 11, D. Bern. Tr. 24:10-26:1; Ex. 17, Y. Bern. 20:13-21:7, 25:14-27:17). He also drafted an addendum to be attached to the FBAR that explained the legal basis for the assertion of privilege and that offered to provide the specific information upon an assurance that it would not be used against the Bernsteins. (Fact St. Para. 19; Ex. 15, Feld Tr. 31:17-32:4; Ex. 21, 22).

Defendants followed Mr. Feld's advice. (Fact St. Para. 20; Ex. 11, D. Bern. Tr. 24:10-26:22; Ex. 13, D. Bern. Tr. 36:25-37:13; Ex. 17, Y. Bern. Tr. 25:14-27:17). They filed the FBAR on a timely basis. (Fact St. Para. 20). They provided their name, address, and social security number; they invoked the Fifth Amendment privilege on a question-by-question basis and included the addendum drafted by Mr. Feld. (Fact St. Para. 20; Ex. 21, 22, Ex. 11, D. Bern. Tr. 24:10-26:22; Ex. 13, D. Bern. Tr. 36:25-37:13; Ex. 17, Y. Bern. Tr. 20:13-21:7). Later, on Mr. Feld's advice, the Defendants filed their joint federal income tax return for the 2010 tax year invoking the Fifth

Amendment as to questions regarding any foreign accounts. (Fact St. Para. 21; Ex. 15, Feld Tr. 37:10-17, Ex. 23). The IRS did not challenge the Bernstein's assertion of their privilege on the tax returns in any respect. (Fact St. Para. 21).

Six years later, in May 2017, the IRS assessed a civil willful FBAR penalty in excess of one-half million dollars on the Defendants solely for asserting, in 2011, their Fifth Amendment privilege on the 2010 FBARs rather than disclosing the specific account information. (Fact St. Para. 23; Ex. 27, 28). Defendants appealed the penalties to the IRS Office of Appeals, which rejected their position in full. (Fact St. Para. 23; Ex. 29). Under applicable procedures, when the Bernstein's failed to pay the assessed penalty, the Government filed this suit.

## D.  ARGUMENT

### I.  Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ubstantive law" determines whether a fact is material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). This matter is appropriate for an entry of summary judgment because there are no genuine issues of material facts in dispute on the two dispositive issues addressed in this Memorandum.

**II.**     **An FBAR Filed with an Explicit Assertion of the Fifth Amendment Privilege Against Self-Incrimination Does not Violate the FBAR Reporting Requirement**

The Bank Secrecy Act requires U.S. persons to report on the FBAR their financial interest in, or signature or other authority over, a foreign financial account for each year the aggregate value of the person's account (or accounts) exceeds $10,000. 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.350; 1010.306(c). FBARs elicit the filer's identifying information (social security number, name, date of birth, address) and information about their foreign financial accounts (*e.g.*, their legal relationship to the account, the highest account balance during the year, the account number, and the name and address of the foreign financial institution). *See* Ex. 21, 22. The filer's signature is required. Violations of the FBAR reporting requirement are subject to criminal and civil penalties. 31 U.S.C. §§ 5322, 5321(a)(5).

Shortly after the IRS began an audit of the Bernsteins in April 2011, the Bernsteins were advised that they needed to file FBARs for the year 2010 by June 30. (Fact St. Para. 19). Following the advice of their attorney, they filed FBARs, providing their identifying information and otherwise asserting their Fifth Amendment privilege. (Fact St. Para. 19-20). Nevertheless, the IRS determined that their invocation of the privilege was a willful violation and asserted the maximum willful FBAR penalties pursuant to 31 U.S.C. § 5321(a)(5)(C), which Government now seeks to collect. (Compl. p. 1).

The Bernsteins did not violate the FBAR reporting requirement because  i) as a matter of law, the Fifth Amendment may be asserted on a FBAR, ii) they had a valid basis to assert their privilege and did so properly, and iii) the assertion of privilege cannot be the basis for a willful civil penalty. "[The] government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been

immunized." *Lefkowitz v. Cunningham*, 431 U.S. 801, 807 (1977).

### 1.   The Fifth Amendment Privilege May Lawfully be Asserted on a Timely Filed FBAR

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination protects communication that is "testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 190 (2004).

All of these elements exist in this case. A communication is considered testimonial if it "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." *Doe v. U.S.*, 487 U.S. 201, 210 (1988). The Fifth Amendment privilege "must be accorded liberal construction," and therefore, extends not only "to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute [a] claimant for a federal crime." *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951). *See also U.S. v. Greenfield*, 831 F. 3d 106, 114 (2d Cir. 2016). A statutory requirement to file a form disclosing testimonial information is considered compulsory, particularly when failure to do so may be criminally sanctioned. *Garner v. U.S.*, 424 U.S. 648, 652 (1976) ("The Government compels the filing of [the] return, much as it compels, for example, the appearance of a 'witness' before a grand jury.").

To our knowledge, no federal court has ruled on the applicability of the Fifth Amendment privilege asserted on a question-by-question basis on a timely FBAR filing. For almost a century, however, the Supreme Court and the Second Circuit have allowed for the invocation of the privilege on an income tax return. The courts have drawn a consistent line – the Fifth Amendment provides no basis to refrain from filing a tax return, but if a taxpayer had a reasonable fear of self-incrimination, the taxpayer may lawfully assert the Fifth Amendment privilege on a tax return on

an item-by-item basis. *U.S. v. Sullivan*, 274 U.S. 259, 263 (1927) ("If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all."); *Garner*, 424 U.S. at 662-63 ("The Fifth Amendment itself guarantees the taxpayer's insulation against liability imposed on the basis of a valid and timely claim of privilege [on a tax return.]"); *U.S. v. Barnes*, 604 F.2d 121, 148 (2d Cir. 1979) (["T]he right to make a *valid* claim of privilege is available even as to amount of taxpayer's income, as well as any other item on the return which could legitimately cause self-incrimination."); *U.S. v. Josephberg*, 562 F.3d 478, 492 (2d Cir. 2009) ("[A] taxpayer may, on his return, invoke his Fifth Amendment privilege selectively as to any particular item of information solicited[.]"). In acknowledging that a taxpayer's answers to line items on a tax return could be testimonial and potentially incriminating, these cases are indistinguishable from the Bernsteins' FBAR issue.

The only reported case we have found that considers the Fifth Amendment privilege against self-incrimination in the FBAR context supports the Bernsteins' position. In *U.S. v. Sturman*, the Government prosecuted an individual for failing to file the FBAR, among other crimes. 951 F.2d 1466 (6th Cir. 1991). He argued that the Fifth Amendment excused his non-filing because the BSA generally "is directed at persons suspect of criminal activities and promotes self-incrimination." *Id.* at 1486-87. The Sixth Circuit disagreed. *Id.* In rejecting the argument that the Fifth Amendment privilege should excuse the failure to file the FBAR altogether, the Court, citing *Sullivan* (at p. 1487), suggested that Sturman could have asserted the privilege specifically on the form itself:

> *Sullivan* implied that any objections to specific questions will be considered only if the individual files a completed return and raises the objections in the return. A defendant's fear of self-incrimination cannot serve as a defense to a failure to complete the information called for on his tax return unless he raised an objection when he filed.

Other courts that have examined different BSA reporting requirements have agreed that the privilege against self-incrimination is not a defense to a failure to file the form, but may be asserted in response to specific request for information. *See e.g.*, *California Bankers Association v. Shultz*, 416 U.S. 21 (1974); *U.S. v. Dichne*, 612 F.2d 632 (2d Cir. 1979); *U.S. v. San Juan*, 405 F. Supp. 686 (D. Vt. 1975); *U.S. v. Des Jardins*, 772 F.2d 578 (9th Cir. 1985). In *San Juan*, like *Sturman*, the Court recognized the principle articulated in *Sullivan* that a filer may still assert the privilege on a question-by-question basis: "[I]f Mrs. San Juan feared that a particular question on Form 4790 might tend to incriminate her ..., she was privileged to refuse to answer that particular question without violating the reporting requirements." *San Juan*, 405 F. Supp. at 695 n. 8.

Defendants here are not being penalized for failure to file the FBAR, and are not challenging the constitutionality of the FBAR reporting requirements contained in 31 U.S.C. § 5314. Instead, Defendants maintain that the statutory FBAR reporting requirement is similar to a tax return in that they both seek testimonial statements from the filer, and thus in accordance with longstanding case law, a timely filer may, as a matter of law, assert the Fifth Amendment privilege on a question-by-question basis upon a reasonable fear of self-incrimination.

## 2. Defendants Validly Claimed Privilege on the Timely Filed FBARs

Defendants' invocation of the Fifth Amendment privilege against self-incrimination on timely filed FBARs was valid because they were compelled to file the form, and the form's line items sought testimonial and potentially incriminating disclosures relating to their foreign accounts. *See Hiibel*, 542 U.S. at 190.

### a. The FBAR Filing Requirement is Compulsory

Section 5314 of the BSA requires U.S. persons to report their ownership of foreign bank accounts to the U.S. government on an annual basis. Willful failure to do so may result in criminal

liability (31 U.S.C. § 5322) and substantial civil penalties (31 U.S.C. § 5321(a)(5)). Civil penalties for the willful failure to file a FBAR or willful failure to report "any identifying information required to be provided with respect to an account" can be as high as 50% of the value of the account on the date of the violation, for each of the years in which the violation occurs (and can be as high as 300% of the value of the account if the penalties are asserted for each open year under the applicable six-year statute of limitations). 31 U.S.C. §§5321(a)(5)(C) and 5321(b).

In light of the criminal and substantial civil sanctions for willful failure to file FBARs, U.S. owners of foreign bank accounts are indisputably compelled to file FBARs, just as U.S. taxpayers are compelled to file tax returns. *See Garner*, 424 U.S. at 652-653 ("Given *Sullivan*, it cannot fairly be said that taxpayers are 'volunteers' when they file their tax returns. The Government compels the filing of a return much as it compels, for example, the appearance of a 'witness' before a grand jury."). Indeed, the Government's assertion here (and in multiple other cases) of a sizable willful civil penalty clearly establishes the compulsory nature of the FBAR filing requirements.

### b. The FBAR Requires Disclosure of Testimonial Information

It is undeniable that the account-related information reportable on the FBAR, and in particular information with respect to which Defendants claimed privilege, is testimonial. A communication is considered testimonial if it "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." *Doe v. U.S.*, 487 U.S. at 210. The FBAR is not like a handwriting exemplar or a blood sample.[8] The filer is answering specific questions.

The Supreme Court's decision in *Doe* makes this clear. There, the Supreme Court enforced a subpoena over an individual's Fifth Amendment privilege where the subpoena directed the

---

[8] *See e.g.*, *Gilbert v. California*, 388 U.S. 263, 266-267 (1967) (handwriting exemplar); *Schmerber v. California*, 384 U.S. 757, 765 (1966) (blood sample).

individual to sign a "consent form" authorizing the disclosure of foreign account records. Critical to the Court's rejection of Doe's claim of privilege was a finding that the form was *not* testimonial—phrased in the hypothetical, the form did not reference a specific account, acknowledge ownership or control of a foreign account, or indicate whether a relationship with the foreign financial institution even existed. *Id.* at 215.

The FBAR is not hypothetical. The statutory FBAR filing requirements mandate the disclosure of the filer's connection to specific foreign accounts and relationship with identified foreign institutions as to which the filer had a financial interest or signature authority. It calls for the account balance and, depending on what part of the form is executed, the filer's precise relationship to the account. (*See.* Ex. 21, 22). It plainly seeks testimonial acknowledgements.

The testimonial nature of the FBAR is not vitiated by the "required records" exception to the Fifth Amendment privilege, which exempts from protection the content of certain classes of pre-existing records required to be maintained by statute or regulation. *Shapiro v. U.S.*, 335 U.S. 1 (1948). The required records exception arose from the Supreme Court's decision in *Shapiro* and is premised on the concept that the Government should be granted unfettered access to records required to be kept by law.[9] *Id.*

This exception to the Fifth Amendment privilege pre-dates the Fifth Amendment "act of production" doctrine, but nonetheless has only applied to, and can only be understood in context with, the compelled production of pre-existing documents. Under the "act of production" doctrine,

---

[9] To determine whether a document is a "required record," the Supreme Court formulated a three-part test: the document (1) must be required to be kept by law for a regulatory purpose; (2) must be of a kind that the regulated party customarily keeps; and (3) must have assumed a "public aspect" to render it analogous to public document. *Grosso v. U.S.*, 390 U.S. 62, 67-68 (1968); *In re Grand Jury Subpoena*, 741 F. 3d 339, 345 (2d Cir. 2013).

although the Fifth Amendment protects compelled testimony (oral or written), it does not apply to the contents of documents already in existence and voluntarily prepared. *Fisher v. U.S.*, 425 U.S. 391, 409-410 (1976). However, when the compelled production of the documents entails potentially incriminating implicit testimonial conduct, the privilege may apply. *Id.* For example, the act of producing documents in response to a subpoena conveys the implicit testimonial admissions that the subpoenaed party possesses and controls the documents and believes them to be responsive to the subpoena. Where such a testimonial admission can incriminate the individual and is not a "foregone conclusion," the Fifth Amendment privilege is extended to the "act of production." *Id.* at 410.

The BSA and associated regulations require that U.S. persons maintain specified records of their foreign accounts. *See* 31 C.F.R. § 1010.420. Over the past decade, the Government has successfully argued that under the "required records" exception it may compel production of these pre-existing documents by subpoena even over the assertion of the Fifth Amendment privilege arising from the potentially testimonial act of production.[10]

The required records exception, however, does not apply to the filing of an FBAR, and specifically to the 2010 FBARs filed by the Bernsteins. The FBAR is not a "pre-existing" record when it is filed. In contrast to demanding the production of pre-existing documents, federal law requires individuals to answer questions on the FBAR and to file the form. Unlike the production of documents, the responses to the questions in Part II through V on the FBAR are without question testimonial. Those parts of the form query the filer regarding specific details about specific bank

---

[10] *See e.g., In re Grand Jury Subpoena*, 741 F. 3d 339; *In re Grand Jury Proceedings*, 707 F.3d 1262 (11th Cir. 2013); *U.S. v. Under Seal*, 737 F.3d 330 (4th Cir. 2013); *In re Grand Jury Investigation M.H.*, 648 F.3d 1067 (9th Cir. 2011), cert. denied, 133 S. Ct. 26 (2012).

accounts. They are the equivalent of the Government interviewing the filer and asking the same questions, or posing written interrogatories along the same line. They demand "[t]he expression of the contents of … individual's mind." *Doe*, 487 U.S. at 210, n.9. In such a circumstance, it is inconceivable that, absent a grant of immunity, a foreign account holder could be compelled over valid Fifth Amendment objections to answer those questions before a grand jury or in response to an IRS summons. *See e.g.*, *U.S. v. Ali*, 2014 WL 5790996 (D. Md. Nov. 5, 2014) (holding that although the required records exception applied to defendant's pre-existing foreign bank account and other records, the Fifth Amendment privilege nevertheless applied to oral testimony including testimony about the content of the records).

That the pertinent information was requested on a government form required to be filed annually (just like a tax return), as opposed to in a summons interview or an appearance before a grand jury, has no constitutional significance. It would be an unfathomable abrogation of the Fifth Amendment privilege to expand the "required records" exception to the compelled testimonial communication reflected on an annual federal form, simply because the government requires the form to be filed or that the filer maintain pre-existing documents relating to the same issue. *See Lefkowitz v. Cunningham*, 431 U.S. at 808 ("We have already rejected the notion that citizens may be forced to incriminate themselves because it serves a government need."). *See also Garner*, 424 U.S. at 656 ("The information revealed in the preparation and filing of an income tax return is, for purposes of Fifth Amendment analysis, the testimony of a 'witness'"); *Youssefzadeh v. Comm'r*, T.C. Dk. No. 14868-14L (Nov. 6, 2015) (holding that a tax return asserting the Fifth Amendment privilege in response to the question regarding foreign bank accounts was not frivolous).[11]

_____

[11] As per Mr. Feld's advice, Defendants also claimed the Fifth Amendment privilege on their 2010 joint income tax return with respect to items relating to their foreign bank accounts. (Fact St. Para. 21, Ex. 23). The Government did not challenge that assertion of privilege. It would be incongruent

c.  Defendants Asserted the Fifth Amendment Privilege in Good Faith
In Fear of Self-Incrimination

Defendants' invocation of the Fifth Amendment privilege on their timely filed 2010

FBARs was valid because of their perceived risk of self-incrimination. The Fifth Amendment

privilege safeguards testimonial disclosures that the person "reasonably believes could be used in

a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. U.S.*,

406 U.S. 441, 445 (1972). The privilege does "not only extend to answers that would in themselves

support a conviction . . . but likewise embraces those which would furnish a link in the chain of

evidence needed to prosecute the claimant[.]" *Hoffman*, 341 U.S. at 486. The Fifth Amendment is

validly invoked if the claimant "has reasonable cause to apprehend danger from a direct question."

*Id.* The validity of the privilege, "however, turns not on the probability or likelihood of

prosecution, but rather on the possibility of prosecution." *Convertino v. U.S. Dep't of Justice*, 795

F.3d 587, 594 (6th Cir. 2015).[12]

Even before speaking with Mr. Feld, but certainly afterward, when the Defendants claimed

---

that a person may claim a Fifth Amendment privilege on the tax returns under *Sullivan*, including
with respect to the questions regarding FBAR reporting and foreign bank accounts – *see
Youssefzadeh*—but yet to find that the same information cannot be privileged when required to be
reported on a FBAR. In light of the fact that the FBAR enforcement is delegated to the IRS, such
conclusion would significantly vitiate the Fifth Amendment privilege, contradict *Sullivan* and its
progeny, and create a significant risk of incrimination. (For information about the delegation
authority of the IRS, *see generally* Memorandum of Agreement and Delegation of Authority for
Enforcement of FBAR Requirements, Apr. 8, 2003).

[12] *See also U.S. v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) (even a "slight possibility of
prosecution" may be sufficient to sustain the privilege claim); *Feinberg v. Comm'r*, 808 F.3d 813,
816 (10th Cir. 2015) ("[T]o invoke the Fifth Amendment you must "face some authentic danger
of self-incrimination." (quoting) *U.S. v. Rivas–Macias*, 537 F.3d 1271, 1277 (10th Cir. 2008)");
*Camelot Group, Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221, 1229 (S.D.N.Y. 1980) ("[T]he right
to assert the Fifth Amendment privilege depends not upon the *likelihood* but upon the *possibility*
of prosecution."). "To sustain the privilege, it need only be evident from the implications of the
question, in the setting in which it is asked, that a responsive answer to the question or an
explanation of why it cannot be answered might be dangerous because injurious disclosure could
result." *Hoffman*, 341 U.S. at 486–87.

their Fifth Amendment privilege on their respective FBARs in response to specific line items they were justifiably concerned about a criminal prosecution relating to their prior tax and FBAR noncompliance. (Fact St. Para. 13, 17, 18). Mr. Feld had advised them that disclosing information on the FBAR would provide a "link in the chain of evidence" that could lead to their prosecution. (Fact St. Para. 18). Their fear of criminal prosecution was plainly reasonable:

- ■ As of the filing deadline for the 2010 FBAR, for over a decade the Bernsteins had failed to disclose their ownership of foreign bank accounts to their accountant, and they had failed to report the accounts on their tax returns or file FBARs. (Fact St. Para. 9, 11; Ex. 11, D. Bern. Tr. 12:10-17, 15:20-16:13; Ex. 1, Y. Bern. Tr. 14:25-15:9.)

- ■ Two days after UBS had provided information about account holders to the U.S. Government, they moved their account from UBS to another bank, and months later, they received a letter from UBS warning them specifically that their names may be disclosed to the U.S. Government. (Fact St. Para. 7-10; Ex. 8, 9, 12).

- ■ They then decided not to participate in OVDP and failed to report their foreign account on their 2009 tax return or file FBARs. (Fact St., Para. 10, 11; Ex. 11, D. Bern. Tr. 12:10-17, 14:8-21,22:22-25; Ex. 13, D. Bern. Tr. 39:7-40:2).

- ■ In 2011, after receiving the letter from the IRS informing them that they were under audit, they were referred to Mr. Feld by a lawyer who told them they had potential criminal problems. (Fact St. Para. 13). By that time, Defendants had been seeing publicity in the media about the Government's prosecution of other UBS account holders. (Fact St. Para. 14, 17; Ex. 15, Feld Tr. 17:9-20:25; Ex. 11, D. Bern. Tr. 19:21-21:5, 23:9-22; Ex. 17, Y. Bern. Tr. 31:18-32:10).

- ■ Since 2009, Mr. Feld had been compiling DOJ press releases relating to the Government's prosecution of the U.S. owners of foreign bank accounts, who were criminally charged with a number of criminal offenses. (Fact St. Para. 15; Ex. 19).

- ■ Drawing on his expertise and taking into consideration the publicized criminal prosecutions of U.S. owners of foreign bank accounts, and the IRS Revenue Agent's authority to recommend referral of the Defendants' case to the IRS CI for criminal investigation, Mr. Feld believed, and told the Bernsteins, that there was a real possibility that they may be criminally investigated and prosecuted for their prior tax and FBAR noncompliance.[13] (Fact St. Para. 17; Ex. 15, Feld Tr. 17:9-20:25, 21:4-22:8; Ex. 20, Feld Tr. 48:3-49:8; Ex. 11, D. Bern. Tr. 19:21-21:5; 23:9-22; Ex. 17, Y. Bern. Tr. 31:18-32:10).

---

[13] Criminal prosecution for Title 26 offenses has a six year statute of limitation, 26 U.S.C. § 6531, and for Title 18 and 31 offenses a five year statute of limitations, 18 U.S.C. § 3282(a).

■ Mr. Feld discussed the potential consequences of a criminal case with the Defendants, who were terrified of going to prison. (Fact St. Para. 17; Ex. 15, Feld Tr. 17:9-20:25; Ex. 11, D. Bern. Tr. 19:21-21:5; 23:9-22; Ex. 17, Y. Bern. Tr. 31:18-32:10).

Mr. Feld was obviously correct in determining that the risk of self-incrimination was substantial if the Defendants provided all of the requested information on Part II of their respective 2010 FBARs. He correctly believed that the information requested on Part II of the FBAR would identify a bank where Defendants held a previously undisclosed account, "which would enable the government to obtain by various means, information concerning that account and the entire history of their unreported accounts at that bank and UBS." (Fact St. Para. 18; Ex. 15, Feld Tr. 34:12-21, 35:4-36:15). Therefore, the disclosure was "a link in the chain" that could incriminate each of the Defendants. (Fact St. Para. 18; Ex. 15, Feld Tr. 34:12-21). As a result, Mr. Feld advised the Defendants to timely file their respective FBARs for the 2010 calendar year with an explicit invocation of their rights under the Fifth Amendment not to incriminate themselves. (Fact St. Para. 19; Ex. 15, Feld Tr. 17:9-20:25, 30:13-31:7; Ex. 11, D. Bern. Tr. 24:10-26:1; Ex. 17, Y. Bern. Tr. 20:13-21:7, 25:14-27:17). There cannot be any doubt about the risk of self-incrimination here – any responsible lawyer would have done the same. Thus, the assertion of the Fifth Amendment privilege here was in good faith. The privilege is asserted in good faith unless it is "*perfectly clear*, from a careful consideration of all the circumstances in the case, that the [claimant] is mistaken, and that the answer[s] *cannot possibly* have such tendency to incriminate." *Hoffman*, 341 U.S. at 488. This standard is clearly met by the facts noted above.

Moreover, there was no legal authority in 2011 or to date stating that one cannot invoke the Fifth Amendment privilege on a timely filed FBAR. In fact, implicit in the Sixth Circuit's opinion in *Sturman*, and other authorities cited above, is the contrary conclusion; while the Fifth Amendment does not excuse a complete failure to file a FBAR, the privilege can be validly

18

asserted under *Sullivan*, on a timely filed form on a question-by-question basis. *Sturman*, 951 F.2d at 1487. In light of *Sturman* and *San Juan*, in conjunction with *Sullivan* and *Garner* that confirmed a taxpayer's ability to raise a valid Fifth Amendment privilege claim on a timely filed tax return, it was objectively reasonable for Mr. Feld to render this advice.[14]

### 3. A Civil Willful FBAR Penalty is an Impermissible Sanction for a Valid Fifth Amendment Claim

The willful FBAR penalty under 31 U.S.C. § 5321(a)(5)(C) is a substantial monetary sanction against the Defendants' constitutional privilege against self-incrimination. It is therefore impermissibly coercive. The Fifth Amendment privilege against self-incrimination can be asserted in "any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar*, 406 U.S. at 444. "[F]or the privilege to be given full effect, individuals must not be forced to choose between making potentially incriminating statements and being penalized for refusing to make them." *U.S. v. Okatan*, 728 F.3d 111, 116 (2d Cir. 2013). *See also Chavez v. Martinez*, 538 U.S. 760, 768-69 (2003) ("[N]o 'penalty' may ever be imposed on someone who

---

[14] It has also been an acceptable industry practice for many years. *See e.g.*, Edward M. Robbins, Jr., *The Fifth Amendment FBAR Lives!* 139 *Tax Notes* 1546, 1548 (June 24, 2013) ("There is no suggestion …that a foreign bank account holder can be hauled in front of a grand jury and compelled, over his Fifth Amendment objections, to orally answer each and every question included on the FBAR. Likewise, the foreign account holder cannot be compelled, over his Fifth Amendment objections, to file a true and complete FBAR."); Michel, Scott D., *Advising a Client with Secret Offshore Accounts—Current Filing and Reporting Problems*, J. of  Tax'n 158, 163 (Sept. 1999) ("While [*Sturman* and *Dichne*] are clear that one who fails to file an FBAR risks potentially serious penalties, they do not foreclose the option of claiming the Fifth Amendment on the FBAR itself. As noted above, where a particular disclosure on a federal tax return might incriminate a taxpayer, it is permissible for the taxpayer to decline to provide the information and to assert the Fifth Amendment privilege on the face of the return. The FBAR should be no different. Thus, while [a taxpayer] is required to file an FBAR, he should not have to provide details on the form that might lead to the discovery of, or provide evidence of, other criminal offenses."). (For full disclosure to the Court, Mr. Michel is an attorney of record in this matter for the Bernsteins.) Although Mr. Feld does not recall being aware of other practitioners taking this approach, he believed that failure by a lawyer to give this advice in "appropriate circumstances would be the equivalent of malpractice." (Ex. 15, Feld Tr. 40:23-13).

exercises his core Fifth Amendment right not to be a 'witness' against himself in a 'criminal case.'"). The Fifth Amendment "penalty" prohibition is not limited to a criminal fine or imprisonment, it means "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack v. Klein*, 385 U.S. 511, 515 (1967) (citing *Griffin v. California*, 380 U.S. 609, 614 (1965)).

The Supreme Court has consistently found that a threat of economic harm, such as the "loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion." *Id.* at 516. *See e.g., Spevack*, 385 U.S. 511 (finding that the threat of disbarment as a consequence for claiming privilege was too "costly" thus becoming "an instrument of compulsion."); *Garrity v. New Jersey*, 385 U.S. 493 (1967) (finding that a threat of employment termination as a cost for the Fifth Amendment claim constituted coercion); *Uniformed Sanitation Men Assn. v. Comm'r of Sanitation of N.Y.*, 392 U.S. 280 (1968) (finding the threat of termination of employment to be coercive); *Lefkowitz v. Turley*, 414 U.S. 70 (1973) (finding the threat of ineligibility to receive government contracts to be coercive); *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977) (finding the loss of public office and temporary prohibition on running for the office to be impermissibly coercive).

Contrary to the position adopted by the Government in this case, "[the] government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." *Cunningham*, 431 U.S. at 807. To conclude otherwise would be "the antithesis of free choice to speak out or remain silent." *Garrity*, 385 U.S. at 497. And although the exercise of the Fifth Amendment privilege may not always be cost free, substantial economic coercion may "in some circumstance, be too powerful to ignore when Fifth Amendment rights are at issue." *U.S. v. Matthews*, 787 F.2d 38, 50 (2d Cir. 1986). *Cf.*

*McKune v. Lile*, 536 U.S. 24 (2002). The assertion of the willful FBAR penalty as a cost for a valid exercise of a constitutional right against compelled self-incrimination is impermissible coercion.

Section 5321(a)(5) of the BSA permits an imposition of a non-willful civil penalty for violation of 31 U.S.C. § 5314 in the amount of $10,000. The penalty is increased to the greater of $100,000 or 50% of the balance in the unreported accounts for a willful violation of the statute. 31 U.S.C. § 5321(a)(5)(C). A one year 50% penalty as in this case is of great significance, aggregating $524,577 against the Defendants. The economic impact of such significant penalty is not *de minimis* and therefore cannot be disregarded when it becomes the cost of exercising a constitutional right. *See McKune*, 536 U.S. at 41. The FBAR filer should not have to make "a choice between the rock and the whirlpool"—remain silent and automatically suffer significant economic consequences or risk self-incrimination. *See Garrity*, 385 U.S.at 496.

In the present case, the Bernsteins acted in good faith. *See e.g.*, *U.S. v. Doyle*, 2018 WL 1902506 (S.D.N.Y. Apr. 19, 2018) (finding "good faith" in raising Fifth Amendment "act of production" privilege in response to the summons).They selectively asserted their privilege, explained their legal basis for doing so, and had a reasonable fear of self-incrimination. (Ex. 21, 22). Thus, in this particular situation, imposing severe economic sanctions solely because the Defendants exercised their Fifth Amendment right is constitutionally proscribed. This remains true even if Defendants' failure to file FBARs in years prior to 2010 was indeed willful. *See Ullmann v. U.S.,* 350 U.S. 422, 427 (1956) ("The privilege against self-incrimination serves as a protection to the innocent as well as to the guilty[.]").

### III.    The Bernsteins' FBARs Filed on Advice of Counsel with an Explicit Assertion of the Fifth Amendment Privilege are not a *Willful* Violation

Even apart from the legal question of whether the Government can assess the FBAR penalty for the FBARs filed with a valid assertion of the Defendants' Fifth Amendment privilege,

there is no material factual issue as to whether the Bernsteins engaged in a willful violation. At the time Defendants filed their 2010 FBAR, and after consulting with counsel, they had a reasonable apprehension of prosecution, believed that disclosing information could be potentially incriminating, and relied on their lawyer's advice in invoking their Fifth Amendment privilege. (Fact St. Para. 16-20). At that time, and to this day, no legal authority has affirmatively invalidated such a privilege claim.

Section 5321(a)(5)(C) of the BSA provides for a civil penalty for "any person willfully violating" the foreign account reporting obligations imposed by BSA Section 5314. A combination of longstanding Supreme Court precedent generally, and specific case law developed in the civil FBAR penalty arena, has settled on the view that willfulness can be i) a voluntary, intentional violation of a known legal duty,[15] ii) reckless conduct,[16] or iii) willful blindness.[17] Whether the Government's burden to establish a willful violation is under a "clear and convincing" or a "preponderance" standard is unsettled in this Circuit, but Defendants urge that under either standard summary judgment should be granted in their favor.[18]

---

[15] *See Cheek v. U.S.*, 498 U.S. 192, 200-201 (1991); *see also U.S. v. Bishop*, 412 U.S. 346, 360 (1973); *U.S. v. Pomponio*, 429 U.S. 10 (1976); *U.S. v. Evangelista*, 122 F.3d 112, 116 (2d Cir. 1997) ("An act is done willfully if it is done voluntarily and intentionally with intent to do something which the law forbids.").

[16] *See U.S. v. Williams*, 489 F. App'x 655, 660 (4th Cir. 2012); *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007); *U.S. v. Garitty*, 304 F. Supp. 3d 267 (D. Conn. 2018); *U.S. v. McBride*, 908 F. Supp. 2d 1186, 1210 (D. Utah 2012).

[17] *See Williams*, 489 F. App'x at 659-60; *U.S. v. Horowitz*, 361 F. Supp. 3d 511 (D. Md. 2019), *appeal docketed*, No. 19-1280 (4th Cir. 2019).

[18] The appropriate standard for the burden of proof in the FBAR penalty context had been the subject of numerous lawsuits. In 2006, the IRS released Chief Counsel Memorandum 200603026 (Jan. 20, 2006) comparing the FBAR penalty to the tax fraud penalty under 26 U.S.C. § 6663 and, therefore, expressing its anticipated position that the burden of proof for the FBAR penalty would be the same, "clear and convincing evidence." In subsequent litigation, the Government argued, and the courts agreed, that the standard of proof should be "preponderance of the evidence" in the FBAR context. *See e.g.*, *Garitty*, 304 F. Supp. 3d 267; *Williams*, 489 F. App'x

Defendants' conduct in filing the 2010 FBARs cannot be construed as willful because they neither knowingly and intentionally nor recklessly violated BSA Section 5314. Surely their conduct was not a "knowing and intentional" violation of law – they clearly acted on the advice of Mr. Feld after a full disclosure of the material facts. (Fact. St. Para. 16, 18-20). Moreover, irrespective of the advice they sought and received, there is no evidence in the record (and it is almost inconceivable) that Dr. and Mrs. Bernstein – a dentist and his spouse, who works in his office – were aware of any jurisprudence concerning the applicability of the Fifth Amendment privilege to tax returns, FBARs or otherwise. (Fact. St. Para. 1, 2).

It was objectively reasonable for Defendants to rely upon and follow Mr. Feld's recommendation. Mr. Feld is an extremely experienced tax controversy and white collar attorney, who spent time prosecuting tax crimes as an Assistant United States Attorney for the Southern District of New York, as well as working on the defense side in private practice advising clients on civil and criminal tax matters. (Fact St., Para. 14, 15; Ex. 18, 19). He is a former Chair of the Committee on Civil and Criminal Tax Penalties of the Tax Section of the American Bar Association. (Fact St., Para. 14; Ex. 18). He also teaches a class on criminal tax enforcement, and is a co-author of a leading treatise, *Tax Fraud and Evasion*.[19] *Id.*

The Defendants explained all relevant material facts to Mr. Feld, and he advised that they timely file the FBARs asserting the Fifth Amendment privilege in response to the specific information requested. (Fact St. Para. 16-19). They included the addendum drafted by Mr. Feld

---

655; *McBride*, 908 F. Supp. 2d 1186. In May 23, 2018, the IRS revised its prior position, adopting the "preponderance of the evidence" standard for burden of proof. *See* Chief Counsel Memorandum POSTS-134605-17 (May 23, 2018).

[19] The treatise has been favorably quoted by the U.S. Supreme Court and by the Second Circuit Court of Appeals. *See Boulware v. U.S.*, 552 U.S. 421, 432 n.9 (2008); *Evangelista v. Ashcroft*, 359 F.3d 145, 151 (2d Cir. 2004).

explaining their legal position. (Fact St. Para. 19, 20). Implicit in Mr. Feld's advice was the notion that such an FBAR filing was compliant with 31 U.S.C. § 5314, and Defendants understood this to be the case. (Fact St. Para. 19, 20). Therefore, Defendants could not have and did not voluntarily and intentionally violate their known legal duty. Rather, they believed in good faith and in reliance on their attorney that the 2010 FBAR filings were in full satisfaction of their legal duty.

Defendants signed and filed their 2010 FBAR in reliance on advice of counsel. To establish the advice of counsel defense, there must be a showing of the following elements: "(1) a request for advice of counsel on [a] legality of the proposed action; (2) full disclosure of the relevant facts to counsel; (3) receipt of advice from counsel that the action to be taken will be legal; and (4) reliance in good faith on counsel's advice." *See C.E. Carlson, Inc. v. SEC*, 859 F.2d 1429, 1436 (10th Cir. 1988). In addition, counsel must be independent. *Id.; Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 181-82 (2d Cir. 1976). The elements of the advice of counsel defense are the same in civil and criminal cases.[20] The record in this case incontrovertibly demonstrates that all of these elements are present; therefore there is no basis for concluding that the Defendants acted willfully.

Establishing knowledge requires the government to negate Defendants' claim of a good-faith misunderstanding of the law, regardless of whether such misunderstanding is objectively reasonable. *Cheek*, 498 U.S. at 201-202. *See e.g.*, *U.S. v. Josephberg*, 418 F. Supp. 2d 297, 301 (S.D.N.Y. 2005) (finding that failure to file returns while under criminal investigation is not shielded by the Fifth Amendment under *Sullivan* but belief that it was might negate willfulness). Here, even irrespective of the legal advice the Defendants received, it was objectively reasonable for them – had they separately studied the issue – to believe that a timely filed FBAR with a Fifth

---

[20] *Compare C.E. Carlson, Inc. v. SEC*, 859 F.2d at 1436; *Zacharias v. SEC*, 569 F.3d 458, 467 (D.C. Cir. 2009), *with U.S. v. Scully*, 877 F.3d 464, 478 (2d Cir. 2017); *U.S. v. Lowe*, 664 Fed. Appx. 38, *3 (2d Cir. 2016); *U.S. v. Evangelista*, 122 F.3d at 116.

Amendment claim is in compliance with the statutory requirements. As noted above, no court has held that a Fifth Amendment claim cannot be validly asserted on a timely filed FBAR, or that such assertion, even if valid, may nevertheless be subject to civil penalty. To the contrary, the legal jurisprudence, as existed in June 2011 and as it exists today, established reasonable basis that a good faith claim of constitutional privilege on a timely filed FBAR, based on a reasonable fear of self-incrimination, was appropriate.

Even under the recklessness or willful blindness standards, the Defendants did not violate the law in filing their 2010 FBAR. The cases finding that reckless conduct gives rise to a willful FBAR violation entail some form of lie, deceit, or concealment. *See e.g.*, *McBride*, 908 F. Supp. 2d 1186; *Norman v. U.S.*, 942 F.3d 1111 (Fed. Cir. 2019). A person acts recklessly in complying with the IRS filing requirements when the person clearly should have known that there was a grave risk that the filing requirement was not being met and the person was in a position to find out whether that was the case for certain very easily. *See, e.g.*, *Bedrosian v. U.S.*, 912 F.3d 144, 153 (3d Cir. 2018); *U.S. v. Flume*, 390 F. Supp. 3d 847, 854 (S.D. Tex. 2019). A finding of willful blindness requires "deliberate actions to avoid confirming a high probability of wrongdoing" and a subjective belief in a high probability of a wrongdoing. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Here, Defendants in fact behaved responsibly – they sought expert legal advice, timely filed their FBARs, invoked their privilege, and explained the basis for their position. (Fact. St. Para. 16-20). They believed in good-faith that Mr. Feld's advice to file an FBAR claiming Fifth Amendment privilege was in full compliance with the FBAR reporting statute. (Fact. St. Para. 16-20). It simply cannot be said under these particular circumstances that by following Mr. Feld's advice, Defendants acted recklessly or took deliberate actions to disregard the FBAR filing requirement.

## **CONCLUSION**

For the reasons set forth above, as a matter of law, summary judgment should be granted in favor of the Defendants because by validly claiming the Fifth Amendment privilege against self-incrimination on advice of counsel Defendants did not willfully violate 31 U.S.C. § 5314.

Dated: February 14, 2020                         Respectfully submitted,
New York, New York                               CAPLIN & DRYSDALE, CHARTERED


                                        By:      /s/ Zhanna A. Ziering
                                                 Zhanna A. Ziering
                                                 NY State Bar No.: 036482006
                                                 EDNY Bar No.: ZZ0216
                                                 600 Lexington Avenue, 21st Floor
                                                 New York, New York 10022
                                                 zziering@capdale.com
                                                 Tel: (212) 379-6075
                                                 Fax: (212) 379-6000

                                                 Scott D. Michel (*Admitted Pro Hac Vice*)
                                                 NY State Bar No.: 2569572
                                                 CAPLIN & DRYSDALE, CHARTERED
                                                 One Thomas Circle, N.W., Suite 1100
                                                 Washington, DC 20005
                                                 smichel@capdale.com
                                                 Tel: 202-862-5030
                                                 Fax: 202-429-3301

                                                 Attorneys for *Defendants*

26