**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff,* | : |
| *v.* | : No 1:19-cv-2912 |
|   | : Hon. Brian M. Cogan |
| DANIEL BERNSTEIN and YANA BERNSTEIN, | : |
| *Defendants.* | : |

**MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDMGENT**

UNITED STATES OF AMERICA

By: */s/ Thomas Peter Cole*
THOMAS PETER COLE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-514-9611 (v)
202-514-5238 (f)
Thomas.P.Cole@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDMGENT ................................................................................................................................ 1
FACTS ........................................................................................................................................... 1
ARGUMENT ................................................................................................................................. 1
    A.    Introduction. ..................................................................................................................... 1
    B.    An Invocation of the Fifth Amendment Can Lead to Adverse or Negative Civil Consequences. ........................................................................................................................ 1
    C.    The Type of Penalty at Issue in This Case Has Never Been Found to be the Type of Impermissibly Coercive Penalty Prohibited Under the Fifth Amendment. ............................... 5
    D.    Cases Suggesting That Criminal Liability Cannot Imposed Where a Fifth Amendment Privilege Is Asserted for Information Sought by an Income Tax Return Do Not Recognize a Defense to the Civil Liability That Might Exist for Items for Which the Fifth Amendment Has Been Invoked. ......................................................................................................................... 7
    E.    The Reliance on Counsel Defense Misstates the Extent to Which an Attorney's Advice Regarding the Filing of an FBAR Might Be Relevant to a Determination of Willfulness Under 31 U.S.C. § 5321. .................................................................................................................... 9
CONCLUSION ............................................................................................................................ 12

ii

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arthur Lipper Corp. v. S.E.C.*,
   547 F.2d 171 (2d Cir. 1976)..................................................................................................10

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976)................................................................................................................2

*Brink's, Inc., v. City of New York*,
   717 F.2d 700 (2d Cir. 1983)....................................................................................................2

*C.E. Carlson, Inc., v. S.E.C.*,
   859 F.2d 1429 (10th Cir. 1988) ............................................................................................10

*Eagle Hosp. Physicians, LLC. v. SRG Consulting, Inc.*,
   561 F.3d 1298 (11th Cir. 2009) ..............................................................................................7

*Feinberg v. Commissioner*,
   916 F.3d 1330 (10th Cir. 2019) ..............................................................................................9

*Gardner v. Broderick*,
   392 U.S. 273 (1968)................................................................................................................6

*Garner v. United States*,
   424 U.S. 648 (1976)................................................................................................................8

*Garrity v. State of New Jersey*,
   385 U.S. 493 (1967)................................................................................................................5

*Griffin v. State of California*,
   380 U.S. 609 (1965)................................................................................................................5

*Grosso v. United States*,
   390 U.S. 62 (1968)..................................................................................................................9

*Haynes v. United States*,
   390 U.S. 85 (1968)..................................................................................................................9

*Leary v. United States*,
   395 U.S. 6 (1969)....................................................................................................................9

*Lefkowitz v. Turley*,
    414 U.S. 70 (1973)..................................................................................................................6

*Lingler v. Fechko*,
    312 F.3d 237 (6th Cir. 2002) ..................................................................................................7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012).....................................................................................................3

*Marchetti v. United States*,
    390 U.S. 39 (1968)..................................................................................................................9

*Markowski v. S.E.C.*,
    34 F.3d 99 (2d Cir.1994)......................................................................................................10

*McKune v. Lile*,
    536 U.S. 24 (2002)..................................................................................................................1

*Moody v. Michigan Gaming Control Bd.*,
    790 F.3d 669 (6th Cir. 2015) .................................................................................................6

*Neonatology Associates v. Commissioner*,
    299 F.3d 221 (3d Cir. 2002).................................................................................................10

*Nu-Chem Labs., Inc., v Dynamic Labs, Inc.*,
    2001 WL 3598160 (E.D.N.Y. March 30, 2001) ...................................................................2

*S.E.C. v. Caserta*,
    75 F.Supp.2d 79 (E.D.N.Y.1999) ........................................................................................10

*S.E.C. v. Harwyn Indus. Corp.*,
    326 F. Supp. 943 (S.D.N.Y. 1971).......................................................................................10

*S.E.C. v. Tome*,
    638 F. Supp. 629 (S.D.N.Y. 1986).........................................................................................2

*Spevack v. Klein*
    385 U.S. 511 (1967)................................................................................................................5

*Spielbauer v. County of Santa Clara*,
    45 Cal.4th 704 (2009) ............................................................................................................6

*Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*,
    392 U.S. 280 (1968)................................................................................................................6

*United States v. Barnes*,
    604 F.2d 121 (2d Cir. 1979)...................................................................................................8

*United States v. Ianniello*,
  824 F.2d 203 (2d Cir. 1987) .................................................................................... 2

*United States v. Josephberg*,
  562 F.3d 478 (2d Cir. 2009) .................................................................................... 8

*United States v. Matthews*,
  787 F.2d 38 (2d Cir. 1986) ...................................................................................... 5

*United States v. Okatan*,
  728 F.3d 111 (2d Cir. 2013) .................................................................................... 5

*United States v. Ramos*,
  685 F.3d 120 (2d Cir. 2012) .................................................................................... 5

*United States v. Sullivan*,
  274 U.S. 259 (1927) ................................................................................................ 8

*Vogt v. City of Hays, Kansas*,
  844 F.3d 1235 (10th Cir. 2017) ............................................................................... 6

**Statutes**

26 U.S.C. § 6664 ......................................................................................................... 10

31 U.S.C. § 5314 ......................................................................................................... 12

31 U.S.C. § 5321 .................................................................................................. *passim*

Bank Secrecy Act ................................................................................................. *passim*

RICO .............................................................................................................................. 2

**Other Authorities**

Fifth Amendment ................................................................................................ *passim*

Eighth Amendment ....................................................................................................... 7

# MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDMGENT

The United States submits this memorandum in opposition to Defendants' motion for summary judgment.

## FACTS

As we did with our moving brief, we submit the separately filed response to Defendants' Local Rule 56.1 statement of material facts as to which Defendants contend there is no dispute.

## ARGUMENT

### A. Introduction.

Defendants' arguments ultimately rest upon a flawed proposition: that a defendant may invoke the Fifth Amendment right to refuse to provide information that might be incriminating without having to suffer any collateral civil consequences. Put another way, Defendants contend that they may invoke their Fifth Amendment rights on an FBAR, and have their assertion not only carry no criminal consequence, but also create immunity from a civil penalty imposed for failure to provide the government with information required under the Bank Secrecy Act and its regulations. But the law does not provide the consequence-free assertion of the Fifth Amendment that Defendants seek. To the extent there is caselaw limiting the civil actions the government can take when there has been an assertion of a Fifth Amendment privilege to avoid providing incriminating testimony, it applies in limited circumstances that are not applicable to this case.

### B. An Invocation of the Fifth Amendment Can Lead to Adverse or Negative Civil Consequences.

The Supreme Court has said that "[i]t is well settled that the government need not make the exercise of the Fifth Amendment privilege cost free." *McKune v. Lile*, 536 U.S. 24, 41 (2002). A cost that a person exercising a Fifth Amendment privilege might pay arises in civil

1

litigation. The Supreme Court has said that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Acknowledging *Baxter*, the Second Circuit long has recognized "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to *civil* actions when they refuse to testify in response to probative evidence offered against them." *Brink's, Inc., v. City of New York*, 717 F.2d 700, 709 (2d Cir. 1983) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) (emphasis in *Brink's*). In *Brink's*, the Second Circuit sustained adverse inferences that the trial court allowed to be drawn in a civil action in which multiple witnesses invoked their Fifth Amendment rights at trial to refuse to answer questions. *Brink's, Inc.*, 717 F.2d at 707-10. *See also United States v. Ianniello*, 824 F.2d 203, 208 (2d Cir. 1987) (holding that an adverse inference may be drawn from assertion of Fifth Amendment privilege in civil RICO actions brought by government).

When coupled with other admissible evidence, an adverse inference drawn based on the invocation of the Fifth Amendment during the proceeding can be sufficient to establish liability in a civil action. Thus, in *Nu-Chem Labs., Inc., v Dynamic Labs, Inc.*, 2001 WL 3598160, * 19 (E.D.N.Y. March 30, 2001), the court found that stipulated facts, "combined with the permissible adverse inferences to be drawn against [the defendant's principal] based on the invocation of his Fifth Amendment privilege at his deposition, is sufficient to support the jury's award of compensatory damages." *Id.* at *19. *See also S.E.C. v. Tome*, 638 F. Supp. 629, 632 (S.D.N.Y. 1986) (permitting an adverse inference to be drawn following invocation of Fifth Amendment in civil case even where the government was the plaintiff).

That there may have been a risk of criminal prosecution at the time the FBAR was submitted likewise does not insulate Defendants from the imposition of civil penalties under the Bank Secrecy Act. The Second Circuit has said that a "defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal investigation or proceeding 'risk[s] the adverse inference arising from [his or her] assertion of the privilege.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97-98 (2d Cir. 2012) (quoting Alvin Hellerstein & Gary Naftalis, Private Civil Actions and Concurrent or Subsequent Regulatory or Criminal Proceedings, SG046 ALI–ABA 903, 951 (2001)).

Sufficient undisputed record evidence exists in the instant case to sustain the penalties imposed by 31 U.S.C. § 5321 without the need for the Court to draw any conclusions about the effect of the attorney-prepared FBAR forms the Defendants filed. It is undisputed that, for tax years 2002-2009, Defendants filed income tax returns on which they checked a box stating that they had no foreign accounts, even though they knew each year that they did possess foreign accounts. (Pl. LR 56.1 Statement (ECF No. 17-1), ¶ 14.) It is also undisputed that the Defendants were aware in 2009 that UBS would soon be turning over account-holder information to the United States, and that prudence dictated becoming compliant with FBAR reporting obligations. (Pl. LR 56.1 Statement (ECF No. 17-1), ¶¶ 12-29.) Lastly, their criminal-defense attorney, Mr. Feld, told both defendants by no later than May 2010 that they had an obligation to report their overseas account.[1] (Pl. LR 56.1 Statement (ECF No. 17-1, ¶ 48.) Thus,

---

[1] Granted, this last piece of evidence exists only because the Defendants waived their attorney-client privilege with respect to their communications with Feld. Without that waiver, the only testimony the government would have with respect to Feld would consist of the FBARs themselves that Feld prepared. Nevertheless, the knowledge of their responsibility to file an FBAR provided to them by Feld is in evidence, and demonstrates Defendants knew of their filing obligation, even without reference to the FBARs they filed in June 2010.

this Court does not even need to consider the FBARs filed in June 2010 to conclude that the Defendants knowingly failed to provide the information required by the Bank Secrecy Act and its regulations. Adequate evidence of willfulness exists even without reference to the attorney-prepared FBARs.

When that evidence is considered with the attorney-prepared FBARs, a conclusion that the Defendants acted willfully within the meaning of 31 U.S.C. § 5321 does not violate any protections that the Fifth Amendment may provide the Defendants in this civil action. As discussed in our moving brief, it is an open question whether the assertion of the Fifth Amendment on the attorney-prepared FBARs may have provided the Defendants any protection in any criminal action that the United States might have pursued against them. Their attorney, Feld, certainly was knowledgeable about criminal law, and he drafted submissions that were intended to comply with the criminal cases addressing the Fifth Amendment within the context of income tax returns or forms required to be submitted under the Bank Secrecy Act. This Court does not need to resolve in this case the issue of whether the attorney-prepared FBARs precluded a finding of criminal liability, and we are not asking the Court to make any such ruling. We are only asking the Court to apply principles that have been applied in civil cases when assertions of the Fifth Amendment have been made. Those principles permit the making of an adverse inference in a civil case against the person invoking the Fifth Amendment. For this case, that means the Court can infer that, by filing the FBAR on which the Fifth Amendment was claimed, the Defendants knew of their obligation to report to the United States their relationship with a foreign bank, and deliberately chose not to provide the required information about their relationship with a foreign bank by the due date for the FBAR.

### C. The Type of Penalty at Issue in This Case Has Never Been Found to be the Type of Impermissibly Coercive Penalty Prohibited Under the Fifth Amendment.

Defendants' brief overstates the nature of the practices that the Constitution bars in response to an invocation of the Fifth Amendment.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." The privilege "permits a person to refuse to answer questions, in formal or informal proceedings, where the answers might be used to incriminate him in future criminal proceedings." *United States v. Ramos*, 685 F.3d 120, 126 (2d Cir.2012). The Second Circuit has said that "[i]n order for the privilege to be given full effect, individuals must not be forced to choose between making potentially incriminating statements and being penalized for refusing to make them." *United States v. Okatan*, 728 F.3d 111, 116 (2d Cir. 2013). The Fifth Amendment most often relates to how an assertion of the privilege can be used in a criminal case. *See, e.g.*, *Griffin v. State of California*, 380 U.S. 609, 613 (1965) (prosecutor may not suggest to jury that invocation of Fifth Amendment was substantive evidence of guilt). But, the Second Circuit has recognized that "[c]oercion associated with a person's livelihood, professional standing and reputation may, in some circumstances, be too powerful to ignore when Fifth Amendment rights are at issue." *United States v. Matthews*, 787 F.2d 38, 50 (2d Cir. 1986).

The recognition of *Matthews* that coercion associated with a person's livelihood, professional standing and reputation might prohibit certain non-criminal-law consequences when there has been an invocation of the Fifth Amendment stems from a series of Supreme Court cases from the 1960s and 1970s. *See Spevack v. Klein* 385 U.S. 511, 515-19 (1967) (attorney may not be disbarred for exercising the privilege); *Garrity v. State of New Jersey*, 385 U.S. 493, 497-98 (1967) (testimony compelled by threatened loss of employment cannot be used in

5

subsequent criminal prosecution); *Lefkowitz v. Turley*, 414 U.S. 70, 83-84 (1973) (architects may not be forced to choose between loss of state contracts and self-incrimination); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 284-85 (1968) (public employees may not be forced to choose between discharge from employment and self-incrimination); *Gardner v. Broderick*, 392 U.S. 273, 279 (1968) (another public-employee case, decided same day as *Uniformed Sanitation Men*). When the principle has been applied in recent years, courts continue to insist upon "grave consequence[s]," such as loss of employment or public contracts, before finding that a decision to invoke the privilege has been made under improper duress. *See Moody v. Michigan Gaming Control Bd.*, 790 F.3d 669, 674 (6th Cir. 2015) (banning harness drivers from horse racing for refusing to answer a regulator's question was "exactly the sort of 'grave consequence solely because [t]he[y] refused to waive immunity from prosecution and [to] give self-incriminating testimony' that the Supreme Court has said unconstitutionally compels self-incrimination.") (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 807 (1977).)

Recent cases have applied these principles in a limited fashion, and have rejected the proposition that the Fifth Amendment prohibits every hard decision a person might have to make regarding whether to reveal information or claim a Fifth Amendment privilege with respect to it. *See Spielbauer v. County of Santa Clara*, 45 Cal.4th 704, 725 (2009) (holding that public employer "may discipline, and even dismiss, a public employee for refusing, on grounds of the constitutional privilege, to answer the employer's job-related questions, so long as the employee is not required, as a condition of remaining in the job, to surrender his or her right against criminal use of the statements thus obtained); *Vogt v. City of Hays, Kansas*, 844 F.3d 1235, 1249 (10th Cir. 2017) (conditional job offer that required allegedly coerced interview did not threaten

6

loss of livelihood or existing job, and thus was not a penalty prohibited under the Fifth Amendment); *Lingler v. Fechko*, 312 F.3d 237, 239 (6th Cir. 2002) (no Fifth Amendment violation where police chief exacted "statements from subordinate officers about on-the-job activities in which the officers may have broken the law"); *see also Eagle Hosp. Physicians, LLC. v. SRG Consulting, Inc.*, 561 F.3d 1298, 1304 (11th Cir. 2009) (affirming entry of default judgment against party whose principal invoked the Fifth Amendment where it was shown that the same person had also disrupted the litigation by intercepting an adversary's e-mails).

The Fifth Amendment does not automatically bar a financial penalty, like the one at issue here, as a consequence for an invocation of the Fifth Amendment. Granted, the amount of the penalty at issue is significant, one half of the account balance, allocated in equal amounts to the two defendants. But that is the way that Congress has designed the statute. Nothing about the penalty implicates the Defendants' livelihoods, professional reputations, or standing within the community. It is merely a monetary sanction. Defendants are free to challenge, and in fact have challenged, the amount of the penalty as being an abuse of the IRS's discretion or excessive under the Eighth Amendment to the Constitution. But those challenges are not relevant to the willfulness inquiry. A penalty imposed under 31 U.S.C. § 5321 is not prohibited as a consequence stemming from an invocation of the Fifth Amendment on an FBAR submitted to the government.

**D. Cases Suggesting That Criminal Liability Cannot Imposed Where a Fifth Amendment Privilege Is Asserted for Information Sought by an Income Tax Return Do Not Recognize a Defense to the Civil Liability That Might Exist for Items for Which the Fifth Amendment Has Been Invoked.**

The income tax return cases Defendants cite (Defs. Br. at pp. 9-10) do not provide a defense to the penalty imposed here, as each of those cases involve only criminal liability that might apply where the Fifth Amendment was or might have been asserted on an income tax

7

return. The court in each of those cases considered how the Fifth Amendment might be viably asserted with respect to information required on an income tax return that might incriminate the person making the return. But, in suggesting that the Fifth Amendment permissibly might be asserted on an income tax return, the court in each case was considering only whether a criminal conviction could be sustained against a defendant who had not properly invoked the Fifth Amendment.

Thus, in *United States v. Sullivan*, 274 U.S. 259, 263 (1927), the Supreme Court sustained a conviction for failure to file an income tax return where the defendant's income was largely derived from the then-illegal source of "traffic in liquor," but the Court did so because the defendant had not asserted the Fifth Amendment with respect to specific entries on the income tax return itself. *Sullivan*, 274 U.S. at 263. Likewise, in *Garner v. United States*, 424 U.S. 648, 665 (1976), the Supreme Court sustained a conviction that was based on incriminating disclosures the defendant made on his tax return, holding that the Fifth Amendment privilege needed to be asserted on the return itself for the defendant to ensure that the return disclosures were not used against him in a criminal trial. *Garner*, 424 U.S. at 665. *See also United States v. Barnes*, 604 F.2d 121, 147-48 (2d Cir. 1979) (conviction based in part on information provided on income tax returns sustained where defendants did not claim Fifth Amendment privilege on income tax returns themselves); *United States v. Josephberg*, 562 F.3d 478, 493-94 (2d Cir. 2009) (conviction sustained, and rejecting argument that an ongoing criminal investigation made the very filing of the returns for later years a potentially incriminating act).

The other cases we have located, and which are commonly cited in this area of the law, discussing the possible assertion of a Fifth Amendment privilege on an income tax return all relate to the possible criminal consequences that might exist where the Fifth Amendment

8

privilege was or might have been asserted. These cases are: *Leary v. United States*, 395 U.S. 6 (1969); *Haynes v. United States*, 390 U.S. 85, 95 (1968); *Grosso v. United States*, 390 U.S. 62, 66–67 (1968); and *Marchetti v. United States*, 390 U.S. 39, 42 (1968).

None of the cases above stand for the proposition that a valid assertion of the Fifth Amendment would insulate a taxpayer from the civil liability that might exist if the filer of the form chose to omit required information pursuant to an assertion of the Fifth Amendment. On the contrary, the *Feinberg* case, cited by the government in its moving brief, demonstrated that, where a taxpayer refuses to substantiate a claimed deduction pursuant to invocation of the Fifth Amendment, the taxpayer failed to meet its burden to show that the IRS's calculation of the tax liability was incorrect. *Feinberg v. Commissioner*, 916 F.3d 1330, 1335-37 (10th Cir. 2019). In *Feinberg*, the court said that the taxpayers failed to "explain how requiring them to bear the burden of proving the IRS erred in applying § 280E to calculate their civil tax liability is a form of compulsion equivalent to a statute that imposes criminal liability for failing to provide information subjecting the party to liability under another criminal statute." *Feinberg*, 916 F.3d at 1336. The Tenth Circuit in *Feinberg* sustained the trial-court ruling in favor of the IRS. *Feinberg*, 916 F.3d at 1337.

>   **E. The Reliance on Counsel Defense Misstates the Extent to Which an Attorney's Advice Regarding the Filing of an FBAR Might Be Relevant to a Determination of Willfulness Under 31 U.S.C. § 5321.**

Under Defendants' remaining argument, their reliance on counsel in submitting FBARs on which they invoked the Fifth Amendment precludes the imposition of a penalty under 31 U.S.C. § 5321 for a willful violation of the Bank Secrecy Act. There is no statutory basis for the assertion of such a defense.

9

The two cases Defendants cite for their reliance-of-counsel defense, *C.E. Carlson, Inc., v. S.E.C.*, 859 F.2d 1429 (10th Cir. 1988), and *Arthur Lipper Corp. v. S.E.C.*, 547 F.2d 171 (2d Cir. 1976), are distinguishable. Both of those cases were fraud cases brought under the nation's securities laws, an area of law that has its own jurisprudence. "Good faith reliance on the advice of an accountant or an attorney has been recognized as a viable defense to scienter in securities fraud cases." *S.E.C. v. Caserta*, 75 F.Supp.2d 79, 94 (E.D.N.Y.1999) (citations omitted). Even when the defense is available, such "good faith reliance" is "not a complete defense, [however,] but only one factor for consideration." *Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir.1994). Even the source of such a defense is not entirely clear. It does not appear to be contained in a statute, and the earliest mention of such a defense that we can thus far locate, *S.E.C. v. Harwyn Indus. Corp.*, 326 F. Supp. 943, 954 (S.D.N.Y. 1971), held only that defendants' good faith reliance upon their counsel's interpretation of a section of the securities law was a factor warranting denial of preliminary injunctive relief. *Harwyn Indus. Corp.*, 326 F. Supp. at 954. From this seed, a reliance of counsel defense has grown in the area of securities fraud.

Defendants do not explain why a reliance-upon-counsel defense should be available to the imposition of a willful penalty made under 31 U.S.C. § 5321. Section 5321 provides a reasonable cause defense for non-willful penalties imposed under the statute. Where a reasonable cause defense exists under a statute, courts frequently consider a party's reliance upon counsel as being a sufficient basis for a demonstration of reasonable cause. *Neonatology Associates v. Commissioner*, 299 F.3d 221, 233-34 (3d Cir. 2002) (construing reliance of professional defense as possible basis for reasonable cause exception to penalty imposed by 26 U.S.C. § 6664). But unlike for non-willful penalties assessed under 31 U.S.C. § 5321, a willful penalty imposed under 31 U.S.C. § 5321 does not have a reasonable cause defense.

10

In any event, Defendants should not be able to successfully argue here that the advice they received to file FBARs on which the Fifth Amendment was asserted allows them to avoid the imposition of a civil penalty under 31 U.S.C. § 5321. All of the evidence demonstrates that Mr. Feld was retained and provided advice because of his experience with criminal law, and that the advice he provided was designed to keep the Defendants "out of prison." (Pl. LR 56.1 Statement (ECF No. 17-1), at ¶ 43.) There has been no engagement letter produced that specifies that the Defendants were retaining Feld for advice on civil matters as well as criminal matters. There has been no opinion letter produced opining that submitting an FBAR on which the Fifth Amendment has been asserted can insulate a defendant from a willful penalty imposed under 31 U.S.C. § 5321. Feld testified that he did not recall that the discussions that he had with his clients discussed the differences between possible criminal and civil liability under the statute. Most significantly, Mr. Bernstein admitted that, "of course" he understood that if he filled out the FBAR the way the Feld advised him to, he might nevertheless be liable for a "fine." (Mr. Bernstein Dep. at 27:7 through 27:13 (ECF No. 17-12).) In following Feld's advice, they do not have appear to have been prosecuted for any violations of the Bank Secrecy Act. But the Defendants' actions in following that advice do not absolve them of liability imposed under 31 U.S.C. § 5321 for their willful failure to report on the FBAR the information required by the Bank Secrecy Act regulations.

## CONCLUSION

For the reasons set forth in this memorandum and in the memorandum submitted in support of its own motion for summary judgment, the United States requests that the Court enter an order of partial summary judgment, finding that each defendant committed a willful violation of 31 U.S.C. § 5314, such that they can be liable for the penalty assessed against each of them pursuant to 31 U.S.C. § 5321, and permitting further briefing on whether the defendants' defenses with respect to the amount of the penalty can be sustained.  The United States also requests that the Court deny the Defendants' motion for summary judgment on the issue of willfulness.

                                UNITED STATES OF AMERICA

                By:    */s/ Thomas Peter Cole*
                         THOMAS PETER COLE
                         Trial Attorney, Tax Division
                         U.S. Department of Justice
                         P.O. Box 55
                         Washington, D.C.  20044
                         202-514-9611 (v)
                         202-514-5238 (f)
                         Thomas.P.Cole@usdoj.gov