**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>DANIEL BERNSTEIN and<br>YANA BERNSTEIN,<br>   Defendants. | )<br>)<br>)<br>)<br>) Case No.: 1:19-cv-02912-BMC<br>)<br>) Judge Brian M. Cogan<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

                 CAPLIN & DRYSDALE, CHARTERED

        By: /s/ Zhanna A. Ziering
           Zhanna A. Ziering (Member of the Firm)
           NY State Bar No.: 036482006
           EDNY Bar No.: ZZ0216
           CAPLIN & DRYSDALE, CHARTERED
           600 Lexington Avenue, 21st Floor
           New York, New York 10022
           zziering@capdale.com
           Tel: (212) 379-6075
           Fax: (212) 379-6000

           Scott D. Michel (*Admitted Pro Hac Vice*)
           (Member of the Firm)
           NY State Bar No.: 2569572
           CAPLIN & DRYSDALE, CHARTERED
           One Thomas Circle, N.W., Suite 1100
           Washington, DC 20005
           smichel@capdale.com
           Tel: 202-862-5030
           Fax: 202-429-3301
           Attorneys for *Defendants*

i

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ....................................................................................................1

**ARGUMENT** ................................................................................................................................2

    **I.**    **The Willful FBAR Penalty is An Impermissible Sanction
for the Valid Exercise of the Defendants' Constitutional Privilege**...........................2

    **II.**   **Defendants Did Not Willfully Violate 31 U.S.C. § 5314**.............................................6

**CONCLUSION** ..........................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                   **Page(s)**

*Albertson v. Subversive Activities Control Board*,
   382 U.S. 70 (1965) .................................................................................................................. 5

*American Vending Group, Inc. v. U.S.*,
   2008 WL 4605934 (D. Md. Aug. 28, 2008) ............................................................................ 9

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976) ................................................................................................................ 3

*Bedrosian v. U.S.*,
   912 F.3d 144 (3d Cir. 2018) .................................................................................................. 10

*De Guerin v. U.S.*,
   214 F. Supp. 2d 726 (S.D. Tex. 2002) .................................................................................... 9

*Doe v. U.S.*,
   487 U.S. 201 (1988) ................................................................................................................ 6

*Fisher v. U.S.*,
   425 U.S. 391 (1976) ................................................................................................................ 6

*Garner v. U.S.*,
   424 U.S. 648 (1976) ............................................................................................................ 4, 5

*Garrity v. New Jersey*,
   385 U.S. 493 (1967) ................................................................................................................ 2

*Grosso v. U.S.*,
   390 U.S. 62 (1968) .................................................................................................................. 5

*Hoffman v. U.S.*,
   341 U.S. 479 (1951). ............................................................................................................... 6

*In re: Grand Jury Subpoena dated February 2, 2012*,
   741 F.3d 339 (2d Cir. 2013) .................................................................................................... 4

*John C. Hom & Assoc., Inc. v. Comm'r*,
   T.C. Summ. Op. 2015-49 (2015) ............................................................................................ 9

*Lefcourt v. U.S.*,
   125 F.3d 79 (2d Cir. 1997) .............................................................................................. passim

*Lefkowitz v. Cunningham*,
   431 U.S. 801 (1977) ............................................................................................................ 2, 3

*Lefkowitz v. Turley*,
  414 U.S. 70 (1973) .................................................................................................................. 2

*Marchetti v. U.S.*,
  390 U.S. 39 (1968) .................................................................................................................. 5

*Markowski v. SEC*,
  34 F.3d 99 (2d Cir.1994) ........................................................................................................ 2

*Mycles Cycles, Inc. v. U.S.*,
  2019 WL 4193382 (S.D. Cal. Sep. 4, 2019) ........................................................................... 9

*Norman v. U.S.*,
  942 F.2d 1111 (Fed. Cir. 2019) ............................................................................................ 10

*Purser Truck Sales, Inc. v. U.S.*,
  710 F. Supp. 2d 1334 (M.D. Ga. 2008) .................................................................................. 9

*Scott Labor, LLC v. Comm'r*,
  T.C. Memo. 2015-194 (2015) ................................................................................................. 9

*Spevack v. Klein*,
  385 U.S. 511 (1967) ................................................................................................................ 2

*Tysinger Motor Co. Inc. v. U.S.*,
  428 F. Supp. 2d 480 (E.D. Va. 2006) ..................................................................................... 9

*U.S. v. Boyle*,
  469 U.S. 241 (1985) ................................................................................................................ 9

*U.S. v. Dichne*,
  612 F.2d 632 (2d Cir. 1979) ............................................................................................. 4, 5

*U.S. v. McBride*,
  908 F. Supp. 2d 1186 (D. Utah 2012). .................................................................................. 10

*U.S. v. Scully*,
  877 F.3d 464 (2d Cir. 2017) .................................................................................................... 2

*U.S. v. Sturman*,
  951 F.2d 1466 (6th Cir. 1991) .......................................................................................... 4, 5

*U.S. v. Sullivan*,
  274 U.S. 259 (1927). ............................................................................................................... 5

*Uniformed Sanitation Men Assn. v. Comm'r of Sanitation of N.Y.*,
  392 U.S. 280 (1968) ................................................................................................................ 2

iv

**Constitutional Provisions**

U.S Const. amend. V ................................................................................................................ passim

**Statutes**

26 U.S.C. § 6050I .............................................................................................................................. 7

26 U.S.C. § 6271 ........................................................................................................................... 8, 9

26 U.S.C. § 6651 .............................................................................................................................. 9

26 U.S.C. § 6724 ........................................................................................................................... 8, 9

26 U.S.C. § 7203 .............................................................................................................................. 4

31 U.S.C. § 5321 ..................................................................................................................... 1, 7, 8

31 U.S.C. § 5314 .............................................................................................................................. 7

**Rules**

Local Civil Rule 56.1(b) ................................................................................................................ 1

## PRELIMINARY STATEMENT

The Government does not dispute that Part II of the 2010 FBARs filed by the Defendants requires the disclosure of information that is compelled, testimonial and, in the circumstances of this case, incriminating. (Gov. Mem. p. 10-12; Ziering Second Affirm., Ex. 8, U.S. Resp. to Interrog. No. 16).[1] It also does not distinguish the Bernsteins' assertion of the Fifth Amendment privilege on the FBARs from the well-established right to invoke that privilege on a tax return. Thus, the Government fails to overcome the fundamental proposition here: the Defendants validly exercised their constitutional privilege against self-incrimination on these FBARs.

Nevertheless, the Government maintains that under 31 U.S.C. § 5321(a)(5)(C) it may impose substantial monetary penalties for the 2010 FBARs. The Government's sole basis for imposing the penalty here is the invocation of privilege against self-incrimination. There is no merit to the Government contention that the Bernsteins' conduct prior to 2011 establishes that they acted willfully when, in good faith reliance on the advice of counsel, they filed the 2010 FBARs invoking their privilege against self-incrimination.[2] The Government's argument directly contravenes controlling Supreme Court precedent and fails to support the contention that it may apply economic coercion to prevent, and impose a severe punishment on, the good faith and valid invocation of the privilege on a FBAR.

Moreover, dismissing the undisputed evidence of the Bernsteins' reliance on Mr. Feld's advice, the Government argues – under a newly created definition of "willfulness" differing from other FBAR cases – that the Defendants acted willfully because they voluntarily filed the FBARs

---

[1] All citations to Gov. Mem. p._ refer to the Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment, dated February 14, 2020 [Dk. No. 17]. All citations to Ex._, refer to exhibits attached to the Second Affirmation of Zhanna A. Ziering, submitted herewith.

[2] The IRS could have but did not assess willful penalties for years prior to 2010 when the Defendants failed to file FBARs. (Def. Rule 56.1(b) St. Para. 2-7).

1

and invoked the privilege rather than answering the form's compulsory questions with testimonial and incriminating information. (Gov. Mem. p. 3-6). Its proposed new standard goes far beyond existing law. Its argument also ignores the underlying significance of the constitutional issues presented here while upending long-settled principles recognizing that where a client makes a full disclosure to a competent professional and relies in good faith on the reasonable advice given, the client cannot be said to have willfully violated the law in doing so. *See, e.g., U.S. v. Scully*, 877 F.3d 464, 476-478 (2d Cir. 2017); *Markowski v. SEC*, 34 F.3d 99, 104-05 (2d Cir.1994).

## ARGUMENT

### I. The Willful FBAR Penalty is An Impermissible Sanction for the Valid Exercise of the Defendants' Constitutional Privilege

The Government does not dispute that the Defendants had a valid basis to invoke their privilege on the FBAR, arguing instead that the Fifth Amendment does not shield them from the punitive civil consequences of the FBAR penalty regime. This argument lacks merit. It is well established that the Constitution prohibits any sanction, including a threat of economic harm in a form of substantial civil sanctions, "which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack v. Klein*, 385 U.S. 511, 515-16 (1967) (internal citation omitted) (threat of disbarment as a consequence for claiming privilege was too "costly" thus becoming "an instrument of compulsion").[3] The Government's assertion that the Fifth Amendment "provides little, if any, benefit in the civil context" ignores decades of controlling Supreme Court precedent and strains credulity. (Gov. Mem. p. 7).

---

[3] *See also Lefkowitz v. Cunningham*, 431 U.S. 801 (1977) (the loss of public office, temporary prohibition on running for the office, and resulting substantial economic burden are impermissibly coercive); *Lefkowitz v. Turley*, 414 U.S. 70 (1973) (the threat of ineligibility to receive government contracts is coercive); *Uniformed Sanitation Men Assn. v. Comm'r of Sanitation of N.Y.*, 392 U.S. 280 (1968) (the threat of termination of employment is coercive); *Garrity v. New Jersey*, 385 U.S. 493 (1967) (a threat of employment termination as a cost for the Fifth Amendment claim constituted coercion).

2

To support the imposition of a substantial monetary sanction solely for the assertion of privilege, the Government relies on the evidentiary rule permitting, in a civil litigation, an adverse inference based on a Fifth Amendment claim. (Gov. Mem. p. 7-10). Its argument extends the adverse inference concept well beyond its bounds – a litigant may of course use a "Fifth Amendment adverse inference" in a civil context as evidence of the underlying fact as to which privilege is asserted. That does not mean a litigant can use the invocation of privilege to establish a party's liability for having invoked the privilege itself. Indeed, the Government cites no case sustaining civil sanctions solely on the basis of a valid assertion of the Fifth Amendment.

To the contrary, in *Lefkowitz v. Cunningham*, the Supreme Court made clear the critical distinction between the impermissible economic sanctions at issue in that case and the adverse inference from a Fifth Amendment privilege assertion it allowed in *Baxter v. Palmigiano*, 425 U.S. 308 (1976):

> *Baxter* did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in *Baxter* was only one of a number of facts to be consider by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted; here, *refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions*. (emphasis added)

431 U.S. at 808, n. 5. In fact, the Government here acknowledges that it is not asking for an adverse inference. It transparently seeks to sustain a substantial economic penalty, imposed as a result of the Defendants' assertion of their constitutional right. (Gov. Mem. p. 9-10). The "adverse inference" principle is a permissive rule of evidence, not authority for imposing an economic penalty under the BSA solely because the privilege was invoked.

The Government also presents a meritless argument that invoking the Fifth Amendment

3

privilege on an FBAR could subject the filer to criminal prosecution for having done so.[4] The Government generally ignores the cases permitting the assertion of privilege on an income tax return. It points only to *U.S. v. Dichne*, 612 F.2d 632 (2d Cir. 1979); *U.S. v. Sturman*, 951 F.2d 1466 (6th Cir. 1991); and *In re: Grand Jury Subpoena dated February 2, 2012*, 741 F.3d 339 (2d Cir. 2013) (the "required records" case). These cases do not advance the Government's position.

*Dichne* and *Sturman* both address whether the *complete failure to file* a Bank Secrecy Act ("BSA") form was excused by the Fifth Amendment. *Dichne* involved a BSA form requiring the reporting of the transportation of currency out of the country; *Sturman* involved the FBAR. Both courts determined that the Fifth Amendment was not a basis to refrain from filing the form altogether because there was no direct linkage between the required disclosure and the potential criminal activity, and the statute was not directed at an "inherently suspect group." *Dichne*, 612 F.2d at 640-641; *Sturman*, 951 F.2d at 1487.

Neither case specifically addressed whether one could assert the Fifth Amendment privilege on a BSA form in response to specific questions, but both strongly suggest that one could.

---

[4] We recognize that as this is not a criminal case, this issue is not directly presented. However, the Government argues that if the privilege does not protect a filer from prosecution, it also would not insulate the filer from civil sanction. Our analysis is exactly the opposite. We believe that the correct view – in light of the decades of Supreme Court and Second Circuit precedent governing tax returns – is that the Government could not proceed criminally against a FBAR filer who validly and selectively invokes privilege. In this case, we are asking the Court to hold that the *civil* FBAR sanction sought here by the Government constitutes an impermissible economic penalty on the invocation of the privilege. If such a ruling, as a by-product, may lessen the likelihood that the Government could successfully prosecute a FBAR filer for a valid and selective assertion of privilege, that result would be consistent with longstanding and settled case law in the tax area, not contrary to any other reported authority, and generally in accord with the constitutional maxim that an individual should not be prosecuted for properly asserting the Fifth Amendment. *Garner v. U.S.*, 424 U.S. 648, 662-63 (1976) (conviction for willful failure to file or to supply information under 26 U.S.C. § 7203 "cannot be based on a valid exercise of the privilege" and the "Fifth Amendment itself guarantees the taxpayer's insulation against liability imposed on the basis of a valid and timely claim of privilege, a protection broadened by § 7203's statutory standard of 'willfulness.'").

In *Dichne*, the Court distinguished cases involving statutes that violated the Fifth Amendment because they were aimed at an inherently suspect group[5] from cases addressing facially neutral disclosure requirements directed at the public at large, such as tax returns, citing *U.S. v. Sullivan*, 274 U.S. 259 (1927). In the latter category, *Sullivan* and its progeny establish that although the Fifth Amendment does not excuse a failure to file the tax return, a filer may invoke the privilege on the return itself in response to specific questions. *Sullivan*, 274 U.S. 259; *Garner*, 424 U.S. 648. Meanwhile in *Sturman*, as noted previously (Def. Mem. p. 10),[6] the Court applied *Sullivan* to make the same distinction.[7] 951 F.2d at 1487. *Dichne* and *Sturman* thus imply that a valid, selective assertion of privilege on a timely filed form cannot be the basis of a criminal charge.

Finally, the Government notes recent Second Circuit case law holding that under the "required records" doctrine it can, over the assertion of the Fifth Amendment privilege, compel the production of pre-existing documents that the BSA requires to be maintained. It argues that since the FBAR's questions are "less expansive" than the scope of the record-keeping requirement, the Fifth Amendment should not apply to a FBAR. (Gov. Mem. p. 11-12). The Government cites no authority – and we cannot envision any – holding that because a record-keeping requirement is "more expansive" than related questions that the Government is compelling a witness to answer, the Fifth Amendment would allow such compulsion even if the answers entailed testimonial self-incrimination. Such a principle would dramatically undermine the Fifth Amendment privilege.

---

[5] *See Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965); *Marchetti v. U.S.*, 390 U.S. 39 (1968); *Grosso v. U.S.*, 390 U.S. 62 (1968).

[6] All citations to Def. Mem. p._ refer to the Memorandum in Support of Defendants' Motion for Summary Judgment, dated February 14, 2020 [Dk. No. 18].

[7] Quoting the Court again at p. 1487: "*Sullivan* implied that any objections to specific questions will be considered only if the individual files a completed return and raises the objections in the return. A defendant's fear of self-incrimination cannot serve as a defense to a failure to complete the information called for on his tax return unless he raised an objection when he filed."

5

Moreover, as previously explained (Def. Mem. p. 13-15), the Government's position ignores the constitutional distinction between compulsory testimony and requiring the production of pre-existing documents. The Fifth Amendment protects against compulsory and potentially incriminating communications that "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." *Doe v. U.S.*, 487 U.S. 201, 210 (1988); *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951). As the Government admits, those are precisely the sort of communications sought by the questions on the 2010 FBAR; the Bernsteins' answers to those questions were incriminating and therefore could have jeopardized their liberty. The "required records" exception narrowly applies only to the act of producing pre-existing (*i.e.*, "required") documents, the content of which is not protected by the privilege. *Fisher v. U.S.*, 425 U.S. 391, 409-410 (1976). Whether the BSA's recordkeeping requirement is more or less "expansive" than the questions on the FBAR is beside the point. The Government may not compel testimonial and potentially incriminating answers to questions on the FBAR merely because it may compel the production of certain related pre-existing records.

## II.     Defendants Did Not Willfully Violate 31 U.S.C. § 5314

The Government essentially makes three arguments in support of its claim that the Bernsteins acted willfully. First, citing *Lefcourt v. U.S.*, 125 F.3d 79 (2d Cir. 1997), it seeks to expand the definition of willfulness in the FBAR context (on which the Second Circuit has not opined) beyond the formulations it has previously urged and seen adopted by other courts. Second, it argues that under *Lefcourt*, even if the Bernsteins held an honest and reasonable belief that their invocation of the Fifth Amendment privilege was lawful, they still engaged in a willful violation because they knowingly failed to provide the information called for on the 2010 FBAR. Third, the Government dismisses the Bernsteins' reliance on counsel defense, arguing that Mr. Feld did

not explicitly discuss with the Bernsteins the civil consequences of the privilege invocation. None of these arguments are convincing.[8]

As to the appropriate standard for "willfulness," Section 5321 of the BSA does not define the term, and the Second Circuit has yet to do so in the FBAR penalty context. As cited in the Defendants' initial filing, other courts have accepted that willfulness as to the FBAR penalty requires lesser culpability than the criminal standard (a voluntary, intentional violation of a known legal duty), encompassing reckless conduct or willful blindness. (Def. Mem. p. 22). The Government now urges yet another formulation, seeking to define willful conduct as "voluntary, conscious, and intentional" as opposed to "accidental or unconscious." (Gov. Memo. p. 4-5). The Government's position – defining willfulness as anything other than accidental or unconscious conduct – goes too far in defining the behavior that could be subject to the statute's draconian and punitive sanctions, and is not supported in the FBAR context, even by *Lefcourt*.

In *Lefcourt*, a law firm had omitted the name of its client on an IRS Form 8300, which is required to be filed by anyone in a "trade of business" who receives cash in certain types of transactions.[9] 125 F.3d 79. The law firm believed that its client's identity was protected by the attorney-client privilege, even though a client's identity is not generally deemed to be a privileged communication. The IRS imposed a penalty based on the firm's "intentional disregard" of the

---

[8] The third argument can be disposed of quickly. It does not matter whether Mr. Feld advised the Bernsteins explicitly as to the civil consequences of their invocation of the Fifth Amendment privilege. Mr. Feld, an expert in the field, advised them on how to comply with the FBAR reporting requirement – without distinction between a "criminal" or "civil" violation of the statute. Mr. Feld, like any ethical and responsible lawyer and officer of the Court, would not counsel a client to engage in a violation of law, whether criminal or civil. His view, which he plainly and clearly recounted at his deposition, was that existing case law supported a decision to invoke the privilege and would satisfy the filing requirements of Section 5314. (Feld Tr. 32:24-33:15, 38:7-40:22; 42:15-44:6).

[9] 26 U.S.C. § 6050I.

7

reporting requirement, and its ineligibility for a waiver for "reasonable cause" and the absence of "willful neglect."[10]  The Court applied the "voluntary, conscious, and intentional" definition for "intentional disregard," and sustained the penalty.  It rejected the firm's argument that because it had a good faith belief in its legal position, it had not engaged in "intentional disregard," and further ruled that there was no reasonable cause.  *Id.* at 82-84.

The Government seeks to extend *Lefcourt* to this case.  It argues that applying that definition of intentional disregard, and following the Court's rejection of the law firm's good faith belief in the claim of privilege, the Government here has established willfulness.  In the Government's view, the Bernsteins intentionally (as opposed to accidently or unconsciously) filed the FBARs invoking their Fifth Amendment privilege, and the reasonableness of those acts, including the reliance on their counsel, is inconsequential. (Gov. Memo. p. 4-5).  That argument stretches the holding of *Lefcourt* well beyond its intended limits.

First, the Court in *Lefcourt* applied the definition of "intentional disregard" in the context of a penalty provision that also contained a waiver for "reasonable cause" and the absence of "willful neglect."  The penalty for a willful FBAR violation has no such exception.  To apply to Section 5321(a)(5)(C) a standard that would define as willful any action that was not an accident or the product of unconsciousness would expand the definition of "willfulness" well beyond existing FBAR case law.  With no potential reasonable cause defense, those subject to the punitive FBAR regime would stand little chance in their defense if they were awake and sentient when engaging in the conduct at issue.

Indeed, the *Lefcourt* standard appears limited to penalties where, unlike the civil FBAR willful penalty, a reasonable cause defense is available.  In *Lefcourt*, the Court recognized that the

---

[10] 26 U.S.C. §§ 6271(e); 6724(a).

reasonable cause/absence of willful neglect standard was important to the proper application of the penalty, declining to define away the "absence of willful neglect" so as to swallow the concept of "intentional disregard."[11] 125 F.2d at 84. Moreover, cases applying the *Lefcourt* definition of reckless disregard have done so in a context of adjudging penalties that include a statutory reasonable cause defense or by weighing factors that could negate intentional disregard.[12]

The standard urged by the Government will, in essence, "impermissibly change[] an intent-based statute into one of strict liability." *Tysinger Motor Co.*, 428 F. Supp. 2d at 485. In seeking to impose a willful penalty simply because the Bernsteins were aware of the filing requirement, the Government would have this Court just ignore any defendant's state of mind or good faith, including the reliance on counsel. No court has extended *Lefcourt* this far in the FBAR context. Indeed, the only court to consider *Lefcourt*'s definition of intentional disregard in a FBAR penalty case pointed to egregious actions reflecting lies, deceit and concealment, and ultimately found that defendant acted recklessly or was willfully blind, dismissing the defendant's argument of good

---

[11] In *U.S. v. Boyle*, 469 U.S. 241, 245 (1985), the Supreme Court had defined the "absence of willful neglect" in Section 6651(a) of the tax code (imposing a penalty for failure to file a tax return without requiring the finding of "intentional disregard") as "a conscious, intentional failure or reckless indifference." The Second Circuit in *Lefcourt* did not apply this definition to the penalty at issue under Sections 6271(e) and 6724(a) because the *Boyle* language would have essentially eliminated the separate inquiry required by the "reasonable cause/absence of willful neglect" defense to the allegation of intentional disregard. 125 F.2d at 84.

[12] *See Purser Truck Sales, Inc. v. U.S.*, 710 F. Supp. 2d 1334, 1339 (M.D. Ga. 2008) (warning that because of the extreme harshness of the penalties, intentional disregard the context of the 6721 penalty "is a high standard of culpability requiring much more than merely negligent or reckless disregard."). *See also Mycles Cycles, Inc. v. U.S.*, 2019 WL 4193382, *4 (S.D. Cal. Sep. 4, 2019) (penalties for failure to file complete Forms 8300); *American Vending Group, Inc. v. U.S.*, 2008 WL 4605934, *5 (D. Md. Aug. 28, 2008) (penalties for failure to file Forms W-2); *Tysinger Motor Co. Inc. v. U.S.*, 428 F. Supp. 2d 480 (E.D. Va. 2006) (penalties for failure to file complete Forms 8300); *De Guerin v. U.S.*, 214 F. Supp. 2d 726, 735 (S.D. Tex. 2002) (penalties for failure to file complete Forms 8300); *Scott Labor, LLC v. Comm'r*, T.C. Memo. 2015-194 (2015) (penalties for failure to file Forms W-2); *John C. Hom & Assoc., Inc. v. Comm'r*, T.C. Summ. Op. 2015-49 (2015) (penalties for failure to file Forms W-2).

faith. *U.S. v. McBride*, 908 F. Supp. 2d 1186, 1206 (D. Utah 2012). These facts are not present here. The Bernsteins acted in good faith, including following the advice of their counsel that by asserting the Fifth Amendment privilege they were fulfilling their statutory requirements.

Second, the Government's reliance on *Lefcourt* ignores three important distinctions with this case:

- The deficient filing in *Lefcourt* was made by a law firm based on the assertion of the common law attorney-client privilege; here, the Bernsteins invoked a vitally important constitutional principle embodied in the Bill of Rights, one consistently given a broad reading by the courts. That a constitutional right is at issue at the basis for the Bernsteins' decision to refrain from answering the FBAR questions is surely a material, if not compelling distinction.

- In *Lefcourt*, the panel ruled that the law firm's basis for declining to identify its client on the Form 8300 was, under existing case law, not objectively reasonable. Defendants here have provided substantial, well-established legal authority in the tax return arena that would render the decision to claim the privilege on the FBAR objectively reasonable. Moreover, in 2011 there was no legal authority prohibiting the assertion of the privilege on the FBAR or authorizing the imposition of a civil sanction as a consequence thereof.

- There was no issue in *Lefcourt* involving the reliance on counsel.

In most FBAR penalty cases where the courts have found willfulness, the defendant engaged in deceptive and fraudulent conduct as to the year and form at issue. Even where the reckless standard has been applied, the evidence reflected conscious and deliberate conduct aimed at evading the filing requirement.[13] The Bernsteins' conduct does not support a finding of willfulness or reckless disregard. (Def. Mem. p. 15). Moreover, their indisputable and reasonable reliance on the advice of their lawyer – under longstanding and settled precedent – establishes that they did not engage in a willful violation of law.

## CONCLUSION

For the reasons set forth above and in the Defendants' Memorandum of Law in Support of

---

[13] *See, e.g.*, *Bedrosian v. U.S.*, 912 F.3d 144 (3d Cir. 2018); *Norman v. U.S.*, 942 F.2d 1111 (Fed. Cir. 2019).

its Motion for Summary Judgment, the Court should deny the Government's motion for partial summary judgment and grant summary judgment in favor of the Defendants.

Dated: February 28, 2020  
New York, New York

Respectfully submitted,

CAPLIN & DRYSDALE, CHARTERED

By: /s/ Zhanna A. Ziering  
Zhanna A. Ziering (Member of the Firm)  
NY State Bar No.: 036482006  
EDNY Bar No.: ZZ0216  
600 Lexington Avenue, 21st Floor  
New York, New York 10022  
zziering@capdale.com  
Tel: (212) 379-6075  
Fax: (212) 379-6000

Scott D. Michel (*Admitted Pro Hac Vice*)  
(Member of the Firm)  
NY State Bar No.: 2569572  
CAPLIN & DRYSDALE, CHARTERED  
One Thomas Circle, N.W., Suite 1100  
Washington, DC 20005  
smichel@capdale.com  
Tel: 202-862-5030  
Fax: 202-429-3301

Attorneys for *Defendants*

11